PACKAGING INDUSTRIES GROUP, INC. & another[1] *vs.*
PAUL E. CHENEY.

Barnstable. January 10, 1980. — May 9, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Civil,* Interlocutory appeal, Appeal, Judicial discretion. *Injunction. Rules of Civil Procedure. Statute,* Construction. *Trade Secret. Unfair Competition.*

Discussion of the availability of appellate review of interlocutory orders
    under G. L. c. 231, § 118. [610-615]
Standard of review applicable to an appeal from the granting or denial
    of a preliminary injunction under G. L. c. 231, § 118. [615-616]
Discussion of the factors to be considered with respect to a request for a
    preliminary injunction. [616-618]
A judge did not err in denying a request for a preliminary injunction
    nationwide in scope, barring the defendant from competing with the
    plaintiffs, or engaging in any way in the business of designing,
    engineering, manufacturing or selling packaging machinery where the
    evidence, when considered in light of the plaintiffs' chance of success
    on the merits, was insufficient to demonstrate that denial of the in-
    junction would create any substantial risk of irreparable harm to the
    plaintiffs and where the risk of harm to the defendant far outweighed
    any risk of harm to the plaintiffs. [618-622]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 5, 1979.

A motion for a preliminary injunction was heard by *Keat-
ing,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*William J. Cheeseman* for the plaintiffs.
*Philip L. Berkeley* for the defendant.

---

[1] The additional plaintiff is Packaging Industries Engineering, Inc.

ABRAMS, J.    Packaging Industries Group, Inc. (P.I. Group), and its subsidiary, Packaging Industries Engineering, Inc. (P.I. Engineering), commenced this action against P.I. Group's former vice president for engineering, Paul E. Cheney,[2] seeking preliminary and permanent injunctive relief, as well as damages.    The plaintiffs claim (1) that Cheney has established a competing business in derogation of the goodwill of a former business allegedly sold by Cheney to P.I. Group, (2) that Cheney has appropriated to his own use the plaintiffs' trade secrets, and (3) that Cheney has violated his fiduciary duties as a former officer of P.I. Group and director of P.I. Engineering by usurping the plaintiffs' corporate opportunities.[3]

The Superior Court judge, after a hearing, denied the plaintiffs' request for a preliminary injunction, nationwide in scope, barring Cheney from competing with the plaintiffs, or engaging in any way in the business of designing, engineering, manufacturing or selling packaging machinery.    Pursuant to G. L. c. 231, § 118, second par., the plaintiffs appeal from this interlocutory order, arguing that the judge abused his discretion (1) in denying their request for a preliminary injunction, and (2) in refusing to hear certain additional testimony offered at the hearing.    The case is before this court on our own motion.    We affirm.

*Availability of Appellate Review.*    Prior to the enactment of G. L. c. 231, § 118, second par., as appearing in St. 1977, c. 405,[4] parties were not entitled to interlocutory appeals as

---

[2] The plaintiffs also sought damages and injunctive relief against one Betsy Lynne David.  David, who had been employed by the plaintiffs as Cheney's secretary, resigned to work with Cheney in a new business, in alleged violation of a security and noncompetition agreement.  Subsequent to the hearing in this case, at which the plaintiffs refused the judge's suggestion that they dismiss David as a defendant, she has been rehired by the plaintiffs, and has therefore been dismissed as a defendant by stipulation.

[3] Cheney denied these allegations, and counterclaimed for damages, arguing that the plaintiffs violated the terms of an oral employment contract.

[4] Since the entire section is relevant to our decision, we set out G. L. c. 231, § 118, in full:

"A party aggrieved by an interlocutory order of a justice of the superior court or the judge of the housing court of the city of Boston or the judge of

of right from orders granting or denying preliminary injunctions. In *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 468 (1975), we held that adoption of Mass. R. Civ. P. 65, 365 Mass. 832-834 (1974), did not incorporate the "wholly statutory" Federal practice, see 28 U.S.C. § 1292(a)(1), permitting interlocutory appeals as of right from orders granting or denying injunctive relief.

In enacting G. L. c. 231, § 118, second par., after our decision in *Foreign Auto*, the Legislature employed language which closely tracks that of 28 U.S.C. § 1292(a)(1) (1976).[5] Where the Legislature in enacting a statute follows a Federal statute, we follow the adjudged construction of the Federal statute by the Federal courts. *Poirier* v. *Superior Court*, 337 Mass. 522, 527 (1958). See *Rollins Environmental Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 179 (1975). We look, therefore, to the interpretation of 28 U.S.C. § 1292(a)(1) to resolve questions regarding interlocutory appellate review under our statute. See *Demoulas Su-*

the housing court of the county of Hampden, may file a petition in the appropriate appellate court seeking relief from such an order. The appellate court may, in its discretion, grant the same relief as an appellate court is authorized to grant pending an appeal under section one hundred and seventeen.

"A party aggrieved by an interlocutory order of a justice of the superior court or the judge of the housing court in the city of Boston or the judge of the housing court of the county of Hampden granting, continuing, modifying, refusing or dissolving a preliminary injunction, or refusing to dissolve a preliminary injunction may appeal therefrom to the appeals court or, subject to the provisions of section ten of chapter two hundred and eleven, to the supreme judicial court, which shall affirm, modify, vacate, set aside, reverse the order or remand the cause and direct the entry of such appropriate order as may be just under the circumstances. Pursuant to action taken by the appeals court the cause shall be remanded to the trial court for further proceedings.

"The filing of a petition hereunder shall not suspend the execution of the order which is the subject of the petition, except as otherwise ordered by the appellate court."

[5]Under 28 U.S.C. § 1292(a)(1) (1976), Federal courts of appeal have jurisdiction of appeals from "[i]nterlocutory orders of the district courts . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

*per Mkts., Inc.* v. *Peter's Mkt. Basket, Inc.,* 5 Mass. App.
Ct. 750, 752 (1977). See generally 9 Moore's Federal Prac-
tice par. 110.20-110.21, 110.25 (2d ed. 1980); 16 C.A.
Wright & A.R. Miller, Federal Practice and Procedure
§§ 3920-3924 (1977);[6] 11 C.A. Wright & A.R. Miller,
Federal Practice and Procedure § 2962 (1973).

The Federal statute, like our own, creates an exception to
the normal rule that only final judgments may be subject to
appeals. See *Baltimore Contractors, Inc.* v. *Bodinger,* 348
U.S. 176, 178 (1955); *Pollack* v. *Kelly,* 372 Mass. 469, 470-
472 (1977). "The exception is a narrow one and is keyed to
the 'need to permit litigants to effectually challenge inter-
locutory orders of serious, perhaps irreparable consequence.'"
*Gardner* v. *Westinghouse Broadcasting Co.,* 437 U.S. 478,
480 (1978), quoting from *Baltimore Contractors, Inc.* v. *Bo-
dinger, supra* at 181. The statute thus creates only a nar-
row exception to our more general policy that interlocutory
rulings may not be presented piecemeal to the Appeals
Court or to this court for appellate review. *Pollack* v. *Kel-
ly, supra. Giacobbe* v. *First Coolidge Corp.,* 367 Mass.
309, 312 (1975). "Ordinarily such appeal is possible only on
the basis of a report by the judge who made the order.
G. L. c. 231, § 111." *National Ass'n of Gov't Employees,
Inc.* v. *Central Broadcasting Corp.,* 379 Mass. 220, 222 n.2
(1979). See G. L. c. 231, § 112; Mass. R. Civ. P. 64, 365
Mass. 831 (1975). See also G. L. c. 211, §§ 3 & 4A.
Therefore, G. L. c. 231, § 118, second par., is limited to
orders that "grant or protect at least part of the permanent

---

[6] Our procedure does differ from that of the Federal courts in one re-
spect. Federal judges "granting or refusing interlocutory injunctions" are
specifically required by Fed. R. Civ. P. 52 (a) to "set forth findings of fact
and conclusions of law which constitute the grounds of [their] action."
Our analogous rule, Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), omits
any such requirement. In the absence of compelling evidence of the need
for such a requirement, we decline to require findings. However, we do
suggest that the Standing Advisory Committee on Civil Rules consider
whether rule 52 (a) might be amended to require findings of fact where
conflicting testimony is the basis for an order granting or denying a pre-
liminary injunction.

relief sought as an ultimate result of the action." 16 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 3921, at 10 (1977).

Furthermore, failure to raise a given issue on an interlocutory appeal made available as of right by G. L. c. 231, § 118, second par., in no way prejudices a party's ability to secure review of such an issue on appeal following final judgment. *Victor Talking Mach. Co.* v. *George*, 105 F.2d 697 (3d Cir.), cert. denied, 308 U.S. 611 (1939). In this sense appeals pursuant to both our statute and the Federal statute, although available as of right, are not mandatory but permissive. *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, Inc., supra* at 752-753. 16 C.A. Wright & A.R. Miller, *supra* § 3921, at 11-13. Nor does the existence of an interlocutory appeal "divest the [trial court] of jurisdiction to proceed with the action on the merits." *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, Inc., supra* at 753, and cases cited.[7]

We also conclude, as a matter of Massachusetts practice, that appeals pursuant to G. L. c. 231, § 118, second par., properly lie to the Appeals Court, or, in an appropriate case, to this court, rather than to a single justice of either court. Such a procedure gives full effect to the legislative judgment that orders regarding preliminary injunctions are so important as to justify a mandatory exception to the normal rule that only final judgments may be subject to appeals.[8]

---

[7] We are therefore unable to understand why, in light of their claims of irreparable injury, plaintiffs have neither pressed for an expeditious trial on the merits, nor proceeded to complete discovery, but have instead allowed proceedings in the trial court to come to a virtual standstill.

[8] This construction also creates a procedural difference between the first and second paragraphs of G. L. c. 231, § 118, which gives effect to corresponding differences in statutory language. Challenges to interlocutory orders pursuant to the first paragraph consist of "petitions for relief," which must be brought to a single justice. *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 470 (1975). In contrast, the second paragraph speaks of "appeals." Additionally, the relief available under the first paragraph is defined by a reference to G. L. c. 231, § 117, and we have therefore said that the procedure pursuant to the first paragraph is "substantially the same" as that under § 117, whereby relief must be sought from a single justice. *Id.* The second paragraph, again by way of contrast, omits any reference to G. L. c. 231, § 117.

While in the absence of exigent circumstances, appeals pursuant to G. L. c. 231, § 118, second par., will not be heard on an expedited basis, see *Demoulas Super Mkts., Inc.* v. *Peter's Mkt. Basket, supra,* parties bringing such appeals may avail themselves of the procedures specified in Mass. R. A. P. 6 (a), as amended, 378 Mass. 924 (1979), to request from the single justice in an appropriate case an order "suspending, modifying, restoring or granting an injunction" during the pendency of their appeal. See *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 470 (1975). In the absence of a report by the single justice, any appeal from the decision reached by the single justice under Mass. R. A. P. 6 (a) must be consolidated with the appeal pending pursuant to G. L. c. 231, § 118, second par. Finally, the fact that an appeal may be taken as of right pursuant to the second paragraph of G. L. c. 231, § 118, does not prohibit a party from seeking discretionary relief from a single justice pursuant to G. L. c. 231, § 118, first par. As *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc., supra,* implied, and as our subsequent decisions in *Rollins Environmental Servs., Inc.* v. *Superior Court,* 368 Mass 174, 181 (1975), and *Corbett* v. *Kargman,* 369 Mass. 971 (1976), made clear, pursuant to G. L. c. 231, § 118, first par., a party may petition a single justice for discretionary "relief" from any interlocutory order. The single justice in such a situation enjoys broad discretion to deny the petition, or to "modify, annul or suspend the execution of the interlocutory order," *Rollins, supra* at 181, or, finally, to report the request for relief to the appropriate appellate court. See e.g., *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasting Corp.,* 379 Mass. 220, 221-222 (1979). Absent such a report, the decision of the single justice cannot itself be appealed on an interlocutory basis. The existence of an alternative procedure under G. L. c. 231, § 118, first par., available as to all interlocutory orders, may be particularly useful in those circumstances in which classification of the order at issue as a preliminary injunction is itself a matter of dispute. See 16 C.A. Wright & A.R. Miller, *supra* at

§§ 3922-3924. In sum, the various avenues by which a party may challenge an interlocutory order granting or denying injunctive relief pursuant to G. L. c. 231, § 118, should provide the flexibility necessary to assure full court review as of right, and expeditious relief when circumstances warrant.

*Standard of Review.* Federal appellate courts have consistently indicated that "[i]n reviewing the granting or denial of a preliminary injunction, the standard is whether the district court abused its discretion. An appellate court's role is to decide whether the [trial] court applied proper legal standards and whether there was reasonable support for its evaluation of factual questions." *Hochstadt* v. *Worcester Foundation for Experimental Biology,* 545 F.2d 222, 229 (1st Cir. 1976).[9] This approach corresponds to long-standing Massachusetts practice. *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.,* 367 Mass. 464, 473 (1975), and cases cited.

While our standard of review is thus framed in terms of abuse of discretion, the Legislature would not have exempted orders granting or denying preliminary injunctions from the final judgment rule "if it intended appellate courts to be mere rubber-stamps save for the rare cases when a [trial] judge has misunderstood the law or transcended the bounds of reason." *Omega Importing Corp.* v. *Petri-Kine Camera Co.,* 451 F.2d 1190, 1197 (2d Cir. 1971). Therefore, in assessing whether a judge erred in granting or denying a request for preliminary injunctive relief, we must look to the

---

[9] Consistent with this standard of review, the scope of Federal appellate review is also limited. "The curtailed nature of most preliminary injunction proceedings means that the broad issues of the action are not apt to be ripe for review." 16 C.A. Wright & A.R. Miller, *supra* at § 3921, at 16. Therefore, while "[j]urisdiction of the interlocutory appeal is in large measure jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the [appellate court] without further trial court development," *id.* at 17, our role will normally be to "review only that part of the order which related to the injunctive relief afforded or denied and only those questions basic to and underlying the specific order which supports the appeal." 9 Moore's Federal Practice par. 110.25 [1] (2d ed. 1980).

same factors properly considered by the judge in the first instance. Evaluation of these factors turns on "mixed questions of fact and law. On review the [trial] court's . . . conclusions of law are subject to broad review and will be reversed if incorrect." *Buchanan* v. *United States Postal Serv.*, 508 F.2d 259, 267 n.24 (5th Cir. 1975). Furthermore, while weight will be accorded to the exercise of discretion by the judge below, if the order was predicated solely on documentary evidence we may draw our own conclusions from the record. If, as is true in the instant case, testimony was heard, we follow the judge's resolution of issues of credibility, and consider the correctness of the order in light of the judge's assessment of credibility.

*Standard for preliminary injunctions.* By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law. On the basis of this record, the moving party must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits. Should the injunction issue, however, the enjoined party may suffer precisely the same type of irreparable harm. Leubsdorf, The Standard for Preliminary Injunctions, 91 Harv. L. Rev. 525, 541 (1978). Since the judge's assessment of the parties' lawful rights at the preliminary stage of the proceedings may not correspond to the final judgment, the judge should seek to minimize the "harm that final relief cannot redress," *id.*, by creating or preserving, in so far as possible, a state of affairs such that after the full trial, a meaningful decision may be rendered for either party. Note, Developments in the Law, Injunctions, 78 Harv. L. Rev. 994, 1056 (1965).[10]

---

[10] The risk that a party will suffer irreparable harm during the time between the hearing on the preliminary injunction and final adjudication on the merits may be minimized by consolidating the trial on the merits with the preliminary hearing, as authorized by Mass. R. Civ. P. 65 (b) (2), 365 Mass. 833 (1965). Our rule derives from Fed. R. Civ. P. 65 (a) (2), added to the Federal rules to encourage consolidation. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (II), 81 Harv. L. Rev. 591, 610 (1968). See generally 11

Therefore, when asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm,[11] the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.[12] See generally Leubsdorf, *supra* at

---

C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2950 (1973). The plaintiffs in the present case claim, without support in the record, to have requested a consolidated hearing. This request was apparently made at the time of the hearing on the request for injunctive relief. If the judge did deny consolidation, his decision was correct. The plaintiffs' request was not timely made. While consolidation is generally desirable in an appropriate case, it is reversible error to order consolidation in such a manner as to deprive a party of "clear and unambiguous notice" and "a full opportunity" to present its case. *Pughsley* v. *3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972). Cf. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974) (motion for summary judgment must be served ten days before hearing). However, had the plaintiffs made a proper motion in a timely manner, it would have been appropriate for the judge to have ordered consolidation.

[11] In the context of a preliminary injunction the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity. See *Radio Hanover, Inc.* v. *United Utils., Inc.*, 273 F. Supp. 709, 713 (M.D. Pa. 1967) (preliminary injunction denied in light of equitable relief available after trial on the merits). Irreparable harm is absent if trial on the merits can be conducted before the injury occurs. See generally 11 C.A. Wright & A.R. Miller, *supra* § 2948, at 431-441.

[12] Since the goal is to minimize the risk of irreparable harm, if the moving party can demonstrate both that the requested relief is necessary to prevent irreparable harm to it and that granting the injunction poses no substantial risk of such harm to the opposing party, a substantial possibility of success on the merits warrants issuing the injunction. See *Washington Metropolitan Area Transit Comm'n* v. *Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977), and cases cited.

540-544; Note, Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction, 71 Colum. L. Rev. 165 (1971); 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure, § 2948, at 453-454 (1973).

*The Merits.* Applying these principles to the present case, we turn first to the plaintiffs' claims of harm, and conclude that the judge could well have found that, on the record before him, the plaintiffs failed to demonstrate sufficient risk of irreparable harm to warrant injunctive relief, regardless of the effect such relief might have had on the defendant. Furthermore, if the risk of harm to the defendant is considered, we conclude that the balance of equities here cuts decisively in favor of the judge's denial of injunctive relief.

1. *Plaintiffs' claims.* In their principal argument, the plaintiffs assert that certain facts, which are not in dispute, establish that they purchased the defendant's former business, Cheney Design Engineering Co., Inc. (Cheney Design), or at least substantial assets of the business, including good will.[13] Therefore, it is said, the judge was required as matter of law to enjoin Cheney from competing with the plaintiffs in derogation of the value of that which he had sold to them. See, e.g., *Tobin* v. *Cody*, 343 Mass. 716, 722 (1962). Moreover, it is claimed, since the "business sold to the plaintiffs by Cheney was nationwide by its very nature . . . to protect the value of the business which plaintiffs acquired, the injunction should be as broad as the business," i.e., nationwide.[14]

The facts on which the plaintiffs rely are as follows. As a result of several meetings with John Bambara, president of

---

[13] Plaintiffs concede that they did not purchase all of the business' assets, and did not acquire the business' name.

[14] Employing approximately eight persons, Cheney's former company designed, engineered, and sold special application or "custom-designed" packaging machinery and equipment. The company manufactured some, but not all, of the equipment it sold. P.I. Group is a major manufacturer of packaging equipment, with headquarters in Hyannis and other locations in Connecticut, Rhode Island and California. The company employs approximately 500 persons and markets its packaging machines throughout the United States and in foreign countries.

P.I. Group, Cheney in April, 1976, joined the company as vice president in charge of engineering, for an annual salary of $50,000. P.I. Group performed certain work in fulfilment of Cheney Design's outstanding contracts. Furniture, drafting equipment and a truck were transferred from Cheney Design to P.I. Group. Cheney Design was paid $20,000,[15] and, in early 1977, Cheney Design was formally dissolved. Cheney left the plaintiff's employment in December, 1978, and formed Cheney Engineering Co., Inc.

While these facts are undisputed, at the hearing there was considerable conflicting evidence as to the intent of the parties at the time they negotiated their business relationship. Bambara maintained that after proposing an initial price of $50,000 to $60,000, Cheney agreed to accept $20,000 for substantially all the assets of his business, including customer accounts not already billed, and to dissolve Cheney Design.

On the other hand, Cheney testified that two quite different proposals were suggested: first, the sale of the entire business and its attendant good will for between $75,000 and $100,000, and second, the sale of only certain of the company's assets, such as the furniture and drafting equipment, for approximately $25,000. Cheney testified that Bambara chose the second proposed alternative after he (Bambara) pointed out that selling only certain assets was to Cheney's "advantage because if for any reason it [i.e., working for P.I. Group] didn't work out, I [Cheney] could always start up the engineering company again with my own customers and my own people." Significantly, although P.I. Group had a standard security and noncompetition agreement, Cheney did not sign any such agreement.

The judge specifically stated that he did not believe Bambara's testimony and indicated that, in his view, there had been no sale of anything other than furniture, drafting equipment and a truck. The record before us amply supports

---

[15] The record also refers to this payment as amounting to $25,000, but the parties generally refer to a $20,000 payment.

the judge's conclusion that there was no sale of good will.[16] In any event, we will not displace the judge's assessment of the credibility of witnesses.

The plaintiffs also contend that Cheney has appropriated their trade secrets. Regarding this claim, the judge properly could have concluded that there was insufficient evidence[17] that Cheney actually appropriated or was likely to use or disclose any trade secrets. While there was testimony from Bambara regarding a confidential "Thermoforming" process, there was no evidence that Cheney was using or disclosing this process in any way, or that he was likely to do so. As to the plaintiffs' claim that Cheney had confidential customer, vendor, or supplier lists, the evidence could be viewed as insufficient to establish that such lists were trade secrets. See *USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90, 97-99 (1979). The plaintiffs made no attempt to demonstrate at the hearing that Cheney's contacts with three of their customers stemmed from his use of any confidential customer list, and two of these accounts had been customers of Cheney before he was employed by the plaintiffs. See *Jet Spray Cooler, Inc.* v. *Crampton*, 361 Mass. 835, 839-843

---

[16] Bambara arranged the supposed purchase of Cheney's business without advice of counsel, and characterized his discussion with Cheney as "such a simple thing . . . I was hiring a man." Bambara, furthermore, evidenced little concern for the specific assets purchased, and the judge could well have viewed the $20,000 paid to Cheney Design as simply a means of inducing Cheney to join P.I. Group, regardless of the actual value of the transferred assets. For this reason, we also find without merit the plaintiffs' additional argument that the judge abused his discretion by refusing to allow further questioning of Cheney as to the value of the equipment and furniture transferred to P.I. Group. Having found that there was no independent sale here at all, but rather only a package deal aimed at hiring a key executive, the judge could reasonably have decided that it was unnecessary to hear further testimony as to whether the value of the transferred assets did or did not equal the $20,000 paid to Cheney Design.

[17] The plaintiffs' attempt to solicit further testimony from the defendant Cheney and possibly other witnesses, see note 16, *supra*, related only to the claim that P.I. Group had purchased the good will of Cheney Design. Therefore, regarding the trade secrets and corporate opportunity claims, we have before us the complete record on which the plaintiffs were content to rely below.

(1972). See generally *J. T. Healy & Son* v. *James A. Murphy & Son*, 357 Mass. 728, 736 (1970), citing Restatement, Torts § 757, Comment b (1939).

The plaintiffs' final argument asserts that Cheney has usurped corporate opportunities belonging to them. See *Barden Cream & Milk Co.* v. *Mooney*, 305 Mass. 545 (1940). The plaintiffs allege that Cheney had done business, or is about to do business, with three accounts ("Tulox," "Swan Hose," and "Pharmasol") he developed while employed as their officer and director. However, two of these accounts, Tulox and Swan Hose, were former customers of Cheney Design. The judge could have concluded therefore that these accounts were subject to the express agreement testified to by Cheney under which he could reinstate his former business and service his previous customers at any time.

Cheney had had no contact with Pharmasol prior to working for the plaintiffs. However, the record reveals no reason why money damages would not adequately redress any harm the plaintiffs might suffer prior to a final judgment should they prevail on the merits regarding their Pharmasol claim. Damages were the exclusive remedy afforded in *Barden Cream & Milk Co.* v. *Mooney, supra,* and in other cases relied on by the plaintiffs, such as *Universal Elec. Corp.* v. *Golden Shield Corp.,* 316 F.2d 568 (1st Cir. 1963), injunctive relief was granted only after irreparable harm was specifically shown. The plaintiffs offered no evidence that Cheney would be unable to pay any damages which they might be awarded. Where the moving party has failed to demonstrate that denial of the injunction would create any substantial risk that it would suffer irreparable harm, the injunction must be denied, no matter how likely it may be that the moving party will prevail on the merits. See *Sampson* v. *Murray,* 415 U.S. 61, 88 (1974).

2. *Balancing the risks of harm.* Even if the judge found that the plaintiffs had demonstrated some risk of irreparable harm, the judge could easily have concluded that this risk was offset by the risk Cheney would have faced had the plaintiffs been granted their requested relief. In assessing

the equities in favor of a party opposing an injunction, we once again look not to the degree of injury alone, but rather to the risk of harm in view of the party's chance of success on the merits. The judge found Cheney to be a more credible witness than Bambara, and, in view of the record before him, the judge could have assessed favorably Cheney's chance of success on the merits in regard to each of the plaintiffs' three claims. Furthermore, even if the judge concluded that regarding at least certain of their claims the plaintiffs were more likely to prevail then Cheney, this conclusion alone would not have required the judge to issue an injunction. It is the combination of likelihood of success and degree of irreparable injury that matters. The judge could well have concluded that "the granting of a preliminary injunction would most seriously disrupt and probably wipe out defendant['s] business, while plaintiff[s'] established structure should have been able to weather the feeble assault upon it pending the outcome of this litigation without serious damage." *Eutectic Welding Alloys Corp.* v. *Zeisel,* 11 F.R.D. 78, 80 (D.N.J. 1950). In sum, the risk of harm to Cheney far outweighed any risk of harm to the plaintiffs.

*Conclusion.* For the foregoing reasons, we conclude that the judge's denial of the plaintiffs' request for a preliminary injunction was based on the application of proper legal standards, and that the record amply supports the judge's resolution of the factual questions before him.

*Order denying preliminary*
*injunction affirmed.*