SHAWN P. O'SULLIVAN[1] & another[2] vs. SECRETARY OF
HUMAN SERVICES & others.[3]

Suffolk.   December 10, 1987. — April 19, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & LYNCH, JJ.

*Mental Health. Moot Question. Practice, Civil, Moot case. Statute,* Con-
struction. *Injunction. Words,* "In attendance."

Although a civil action arising from the named plaintiffs' treatment at Bridge-
water State Hospital had become moot due to their transfer to facilities
outside the jurisdiction of the Department of Correction, this court
reached the issue sought to be raised, where plaintiffs' counsel were
prepared to pursue the action on behalf of a current patient at Bridgewater;
where the matter had been fully briefed, and the trial judge's rulings
would have continued impact on administrative practices at State mental
institutions; and where the case raised a question which appeared capable
of repetition yet apt to evade review. [192-193]
The judge hearing an action for declaratory and injunctive relief brought by
two patients at Bridgewater State Hospital did not err in granting an
injunctive order that required constant observation of patients confined
in seclusion without mechanical restraint, where the language of G. L.
c. 123, § 21, ninth par., upon which the judge's order was based, clearly
and unambiguously required a specially trained person to be "in attend-
ance" either inside or immediately outside such a patient's room.
[193-197]
In an action by two patients at Bridgewater State Hospital, a judge did not
abuse his discretion by granting a preliminary injunction enjoining the
defendant State officials from continuing certain seclusion and restraint
practices alleged to violate G. L. c. 123, § 21, where there was substantial
risk of irreparable harm to affected patients, where the plaintiffs appeared
likely to prevail on the merits of their claim, and where considerations
of public interest supported the granting of relief. [197-198]

---

[1] By his mother and next friend, Maureen Hoyt.

[2] James McKellar.

[3] The other defendants are the Commissioner of the Department of Cor-
rection and the Superintendent of Bridgewater State Hospital. The Governor
of the Commonwealth was also named as a defendant, but no order has
been entered against him.

CIVIL ACTION commenced in the Superior Court Department on July 17, 1987.

A motion for a preliminary injunction was heard by *James P. Lynch, Jr.,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Douglas H. Wilkins,* Assistant Attorney General, for Secretary of Human Services & others.

*Roderick MacLeish, Jr.* (*Susan B. Tuchman* with him) for the plaintiffs.

*George Napolitano,* for Department of Mental Health, amicus curiae, submitted a brief.

LIACOS, J. This is an action for declaratory and injunctive relief brought by two patients at Bridgewater State Hospital (Bridgewater) against various State officials, alleging violations of G. L. c. 123, § 21 (1986 ed.). The plaintiffs sought, inter alia, a preliminary and permanent injunction enjoining the defendants from continuing certain seclusion and restraint practices in violation of c. 123, § 21.

On July 31, 1987, a judge in the Superior Court found that the plaintiffs were entitled to injunctive relief. He deferred entry of a preliminary injunction, however, to allow for completion of a plan intended to bring State practices at Bridgewater to compliance with the mandates of § 21. At that time, the defendants would be permitted to show cause why the injunction should not enter. The plan was completed on August 10, 1987. Shortly thereafter, the Department of Correction issued draft regulations regarding the use of seclusion and restraint at Bridgewater.

The judge heard further argument on the request for injunctive relief in light of the new plan and proposed regulations. On September 11, 1987, he granted, in part, the plaintiffs' application, ruling that monitoring and other associated procedures pertaining to patients in seclusion and restraint at Bridgewater, either as then practiced or as required under the newly proposed regulations, failed to comport with the requirements of c. 123, § 21. A four-part preliminary injunction issued. The defendants appealed only the portion of the second paragraph of

the injunction that requires constant observation of patients in seclusion.[4] On the defendants' motion, the judge stayed implementation of the second paragraph, pending appeal. He subsequently denied the plaintiffs' motion for relief, pending appeal, or for modification of the stay. A single justice of the Appeals Court denied a similar motion on September 30, 1987. We granted the defendants' application for direct appellate review.

1. *Mootness.* At the outset, we note that the issue of the named plaintiffs' treatment at Bridgewater is moot; both plaintiffs have been transferred to facilities outside the jurisdiction of the Department of Correction.[5] The plaintiffs' counsel, however, apparently are prepared to pursue this action on behalf of one who is currently a resident at Bridgewater, and the defendants do not press a claim of mootness. The matter has been briefed fully, and the rulings of the judge have continued impact on administrative practices at Bridgewater and other State mental institutions. Additionally, the issue raised is likely to arise again and appears "capable of repetition, yet evading review." *Guardianship of Linda,* 401 Mass. 783, 784 (1988). See, e.g., *Commonwealth* v. *Yameen,* 401 Mass. 331, 333 (1987); *Metros* v. *Secretary of the Commonwealth,* 396 Mass.

---

[4] Paragraph 2 of the preliminary injunction restrained the defendants (other than the Governor) from "[f]ailing to provide adequate monitoring of a person in that form of restraint which is confinement in a place of seclusion without mechanical restraint, by a person in attendance specially trained to understand, assist and afford therapy to the person in such seclusion. For purposes of this preliminary injunction, the specially trained person may be situated immediately [outside] the room in which the person is secluded without mechanical restraint; in that event, however, if so located, the specially trained person (1) shall be in attendance at a location at all times in full view of the secluded person, and (2) shall be able at all times to observe the secluded person."

The other paragraphs enjoined these same defendants from: (1) restraining a patient except in cases of emergency, as defined in G. L. c. 123, § 21, third par.; (2) failing to provide constant observation and continuous physical presence, by a specially trained person, for patients in mechanical restraint; and (3) failing adequately to document (in compliance with statutory specifications) the reasons for initiating or continuing any form of restraint.

[5] The judge denied the plaintiffs' preliminary motion for class certification under Mass. R. Civ. P. 23, 365 Mass. 767 (1974).

156, 159 (1985). Thus, we exercise our discretion to decide this matter.

2. *The seclusion and restraint statute*. General Laws c. 123, § 21, ninth par., provides: "No person shall be kept *in restraint* without a person in attendance specially trained to understand, assist and afford therapy to the person in restraint. *The person may b[e] in attendance immediately outside the room in full view of the patient when an individual is being secluded without mechanical restraint*; provided, however, that in emergency situations when a person specially trained is not available, an adult[ ] may be kept in restraint unattended for a period not to exceed two hours. In that event, the person kept in restraints must be observed at least every five minutes; provided, further, that the superintendent, director, or designated physician shall attach to the restraint form a written report as to why the specially trained attendant was not available. The maintenance of any adult in restraint for more than eight hours in any twenty-four hour period must be authorized by the superintendent or facility director or the person specifically designated to act in the absence of the superintendent or facility director; provided, however, that when such restraint is authorized in the absence of the superintendent o[r] facility director, such authorization must be reviewed by the superintendent or facility director upon his return." (Emphasis added.)[6]

The defendants argue that the judge engrafted a new requirement to § 21 by mandating constant observation of secluded patients. The defendants maintain that neither the statutory language nor the legislative history establishes a constant observation requirement. Rather, the legislative purpose was to allow for clinical discretion in administering the use of seclusion. They argue that the "in attendance" language requires only that someone be nearby to understand, assist and afford therapy to the patient, and to diminish the patient's sense of

---

[6] General Laws c. 123, § 1 (1986 ed.), defines the several forms of "Restraint" as "bodily physical force, mechanical devices, chemicals, *confinement in a place of seclusion* other than the placement of an inpatient or resident in his room for the night, or any other means which unreasonably limit freedom of movement" (emphasis supplied).

solitude. Reading in isolation the phrase "in full view of the patient," the defendants claim that the statute is written solely from the patient's vantage point, requiring only that secluded patients be able to see a trained observer if they so wish. We disagree.

We are mindful that "[t]he general rule is that '[w]here the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words.' *Gurley* v. *Commonwealth,* 363 Mass. 595, 598 (1973). See *Commonwealth* v. *Vickey,* 381 Mass. 762, 767 (1980); *Johnson's Case,* 318 Mass. 741, 747 (1945)." *Restaurant Consultants, Inc.* v. *Alcoholic Beverages Control Comm'n,* 401 Mass. 167, 170 (1987).

We have stated also that "[t]he statutory language, when clear and unambiguous, must be given its ordinary meaning. *Hashimi* v. *Kalil,* 388 Mass. 607, 610 (1983). When the use of the ordinary meaning of a term yields a workable result, there is no need to resort to extrinsic aids such as legislative history. *Id.* Moreover, the statutory language is the principal source of insight into legislative purpose. *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977)." *Bronstein* v. *Prudential Ins. Co.,* 390 Mass. 701, 704 (1984). In our view, the statute is clear and unambiguous. Hence, we need not refer to the statutory history.

The seclusion and restraint law explicitly mandates that the various forms of restraint "may *only* be used in cases of emergency, such as the occurrence of, or serious threat of, *extreme* violence, personal injury, or attempted suicide" (emphasis added). G. L. c. 123, § 21. See also G. L. c. 123, § 1 (containing a stringent definition of "Likelihood of serious harm"). The "use of the word 'only' in G. L. c. 123, § 21, means 'for no other purpose.'" *Rogers* v. *Commissioner of the Dep't of Mental Health,* 390 Mass. 489, 510 (1983). Only when the patient harms, or presents a serious threat of harm, to himself or others, is the use of restraint permitted. Neither doctors nor courts have the power to expand the circumstances in which a patient may be restrained. *Id.*

Where the requisite emergency situation exists, § 21, ninth par., further prescribes the manner in which seclusion or mechanical restraint is to be applied. As the judge below found, in an uncontested portion of the preliminary injunction, the use of mechanical restraint necessitates that a specially trained person be "situated in the room" with the patient. The staffer must be able constantly to observe the restrained person. This requirement flows from the first sentence of § 21, ninth par.: "No person shall be kept in restraint without a person in attendance specially trained to understand, assist and afford therapy to the person in restraint." The defendants' new regulations in effect acknowledge that, in this context, being "in attendance" requires constant observation of the mechanically restrained patient.[7]

The statute provides an option regarding the manner of constant observation when seclusion without mechanical restraint occurs. The second sentence of § 21, ninth par., then provides that the person "*may b[e] in attendance immediately* outside the room in full view of the patient*" (emphasis added). While the person need not be in the room with the secluded person, repetition of the operative words "in attendance" indicates that the requirement of constant observation remains unchanged.[8] See *Plymouth County Nuclear Information Comm. v. Energy*

---

[7] Specifically, an institutional regulation, 103 BSH 651.10(1)(c) (1987) provides: "Whenever a patient is in seclusion or restraint, a specially trained staff person or specially trained observer as defined in 651.06(4) shall be in attendance of the patient, subject to the following qualifications: . . . (c) The staff person may be in attendance of a patient in mechanical restraints by being situated so that the staff person is within verbal contact of the patient and is able to observe the patient in full view at any time. It is not necessary for a staff person in attendance of a patient in mechanical restraints to be in full view of the patient."

[8] The defendants argue that, in this sentence, the words "in attendance" simply mean "present" or "within hollering distance." They offer no explanation why these operative words carry a different meaning in the sentence immediately preceding. Moreover, under the defendants' interpretation, the words "in attendance" and "immediately" would be surplusage. A staff person obviously would have to be "present" in the area in order to be "within hollering distance" and to be observable to the patient. See, e.g., *Chatham Corp. v. State Tax Comm'n,* 362 Mass. 216, 219 (1972) (noting "every word of a legislative enactment is to be given full force and effect");

*Facilities Siting Council,* 374 Mass. 236, 240 (1978) (word used in one part of statute in definite sense should be given same meaning in another part of same statute). If the option of the staff person not to be in the same room with the patient is exercised, however, there is an additional requirement that the secluded patient be able to see the staff person.

The logic of this statutory scheme rests on the practical differences between seclusion and mechanical restraint. When the latter is used, the patient's bodily movement is severely restricted. The necessity of having a trained observer to "assist and afford therapy" is evident. Moreover, as the judge found, the nature of restraining devices may preclude the staff person from being "in full view" of the person in restraint. With the former method, however, the patient may move freely about the seclusion room. If, for reasons of the observer's own safety or otherwise, the observer shall be "immediately outside" the room in observing the patient, then he constantly must be visible to the patient as if he were in attendance inside the seclusion room.[9]

---

*Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 352 Mass. 617, 618 (1967) (no statutory words regarded as superfluous).

We note that, in a different context, we have stated that the words "in attendance" are not ambiguous, *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.,* 359 Mass. 221, 225-226 (1971) (construing words in a contract of insurance).

[9] The statute further requires that, "in emergency situations when a person specially trained is not available, an adult[ ] may be kept in restraint unattended for a period not to exceed two hours." G. L. c. 123, § 21, ninth par. In that event, there must be observation of the restrained patient "at least every five minutes." *Id.* This exception constitutes a departure from the normal requirement of constant observation.

Our interpretation of the seclusion and restraint law comports with newly enacted appropriations provisions. Chapter 1 of the Acts of 1988, § 2, allocates funds to Bridgewater for audiovisual equipment "to monitor patients who are in seclusion and restraint" pursuant to § 21. Section 6 provides a new alternative for constant observation of secluded patients: "[N]o person at Bridgewater state hospital shall be kept in *seclusion without mechanical restraint* without a person *in attendance* specially trained to understand, assist and afford therapy to the person in seclusion unless the person in seclusion is monitored through the use of electronic audio-visual equipment" (emphasis added).

We conclude, therefore, that the judge did not err in his interpretation of the statute.

3. *Preliminary injunctive relief.* We consider next whether the judge exercised properly his discretion in ordering a preliminary injunction. The standard for review of a grant or denial of preliminary injunctive relief is whether the judge abused his discretion. Our review, however, is not perfunctory. "[W]e must look to the same factors properly considered by the judge in the first instance." *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 615-616 (1980).

To obtain a preliminary injunction, the moving party must show that, without such relief, "it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits." *Id.* at 616. The judge must balance the moving party's chance of success on the merits and its risk of irreparable harm against any similar risk of irreparable harm to the opposing party. The touchstone of the analysis is "the risk of such harm in light of the party's chance of success on the merits." *Id.* at 617.

In the case at bar, the judge found that the plaintiffs would suffer "immediate and irreparable" harm if a preliminary injunction were not granted. In balancing the anticipated harm to the plaintiffs against the injury to the defendants, the judge concluded that the balance tipped in favor of the plaintiffs. Finally, he concluded that the plaintiffs have a likelihood of success on the merits, and that the public interest supported issuance of a preliminary injunction conforming to the requirements of G. L. c. 123, § 21.

Our examination of the relevant factors supports the judge's conclusions. Without this preliminary relief, the plaintiffs might suffer deprivation of the rights afforded under G. L. c. 123, § 21.[10] Any violations to their persons could not be

---

[10] Seclusion practices in violation of G. L. c. 123, § 21, constitute a violation of a protected liberty interest under the Fourteenth Amendment's due process clause. *Rogers* v. *Okin,* 478 F. Supp. 1342, 1375 (D. Mass. 1979), modified on other grounds, 634 F.2d 650 (1st Cir. 1980), vacated and remanded sub nom. *Mills* v. *Rogers,* 457 U.S. 291 (1982).

remedied retroactively. In light of the substantial risk of harm to the plaintiffs given their chance of success on the merits, there was no error in granting the preliminary injunction.

The case is remanded for further proceedings consistent with this opinion. The judge may consider whether reasonable attorneys' fees and costs incurred in the pursuit of this appeal should be awarded to the plaintiffs. See G. L. c. 12, § 11I.

*Order affirmed.*