915 F.2d 1557
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Raymond MATHIEU, Plaintiff, Appellant,
v.
Gerard BOYLE, et al., Defendants, Appellees.
 No. 90-1103.
 United States Court of Appeals, First Circuit.
 Sept. 19, 1990.
 
 Appeal from the United States District Court for the District of Massachusetts, William G. Young, District Judge.
 Raymond Mathieu on brief, pro se.
 Nancy Ankers White, Special Assistant Attorney General, Richard C. McFarland and William D. Saltzman, Senior Litigation Attorney, on brief, for appellees.
 D.Mass.
 AFFIRMED.
 Before BREYER, Chief Judge, and LEVIN H. CAMPBELL and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 In 1979, in Massachusetts state court, Raymond Mathieu was found not guilty of murder by reason of mental illness. He was committed to Bridgewater State Hospital ("Bridgewater") and has been recommitted there on an annual basis ever since, pursuant to M.G.L. c. 123, Sec. 16(c). In 1989, he filed a pro se civil rights action under 42 U.S.C. Sec. 1983, claiming a denial of procedural due process in connection with two "disciplinary" incidents. He sought declaratory and injunctive relief and damages from the Department of Correction and four state officials--the Commissioner of Correction, the Bridgewater supervisor, and two Bridgewater correctional officers. Upon motion of the defendants, the district court summarily dismissed the complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6). We affirm.
 
 
 2
 Mathieu's factual allegations are straightforward and largely undisputed. On December 7, 1988, following an "alleged altercation" with another patient, he was placed in locked-door seclusion overnight.[1] Three weeks later, Correction Officer Nash received a handwritten note indicating that a patient with the initials "R.M." had a homemade weapon in his room. Two patients had those initials and both of their rooms were searched. The search of Mathieu's room, to which he consented, uncovered a weapon--a "shank" crafted from a toothbrush and a bedspring. Mathieu denied knowledge of this weapon but was again placed in seclusion and again released the following morning. He thereafter requested a hearing pursuant to the Department of Correction regulations governing disciplinary proceedings, 103 C.M.R. 430, which request was denied. At Mathieu's recommitment hearing, held in Brockton district court on February 10, 1989, evidence of both of these incidents was introduced; Officer Ficco described them in his testimony and the "incident reports" themselves were admitted. As a result of the hearing, Mathieu was recommitted to Bridgewater for a period of up to one year.
 
 
 3
 Mathieu's legal contentions are less readily discernible.[2] His complaint alleges generally that he was entitled to notice and a hearing in connection with these two incidents. Yet it fails to specify whether he is claiming a right to a hearing prior to his placement in seclusion, or only afterwards; the complaint can fairly be construed either way. The defendants have read it in the former sense, and have mounted a lengthy refutation of any claimed right to a pre-seclusion hearing.[3] Mathieu intimated below, however, and now makes clear in his appellate briefing, that he is instead advancing only the latter claim.
 
 
 4
 A further interpretive difficulty arises. The question remains whether Mathieu is challenging the fact of his seclusion per se, or rather the denial of an opportunity to rebut the factual allegations giving rise to that seclusion. If the former--if he is alleging that he was improperly secluded under the standards of M.G.L. c. 123, Sec. 21 and 103 B.S.H. 651--we would be called upon to determine whether those standards contain "specific substantive predicates" and "explicitly mandatory language" so as to create a liberty interest.[4] Hewitt v. Helms, 459 U.S. 460, 472 (1983); accord, e.g., Kentucky Department of Corrections v. Thompson, 109 S.Ct. 1904, 1910 (1989). Yet we cannot find in Mathieu's complaint, even when broadly construed,[5] any intention to advance this claim. In none of his pleadings has he suggested that an "emergency"--the statutory prerequisite to a seclusion order--did not exist. Nor has he alleged that the specific incidents leading to his seclusion did not occur. Although he refers to the "alleged" altercation, he nowhere has affirmatively denied that it took place. And he has not denied that a weapon was found in his room; he simply claims that he had no knowledge of it. The complaint, after initially mentioning in the Statement of Facts that he was transferred to the Intensive Treatment Unit, makes no further reference to his seclusion, and it nowhere refers to the governing legal standards. And the several references to "loss of liberty" in the complaint arise in the context of his challenge to the introduction of such allegations at his recommitment hearing.
 
 
 5
 Mathieu's complaint, therefore, can only be read as challenging the denial of an opportunity to rebut these allegations, particularly prior to their use at the recommitment hearing. As so construed, it falls well short of stating a cognizable due process violation. Mathieu has alleged no facts to suggest that his liberty interest was infringed by the mere existence of such unrebutted allegations on his record at Bridgewater[6]; only when they were introduced at his recommitment hearing was his right to due process triggered. And the process afforded him at that time was constitutionally sufficient. Elaborate procedures must accompany any commitment or recommitment hearing, including the right to counsel, the right to introduce evidence, and the right to appeal. M.G.L. c. 123, Secs. 5, 9. See, e.g., Jackson v. Fair, 846 F.2d 811, 816 (1st Cir.1988). Mathieu was represented by counsel at the hearing, and could have introduced rebuttal evidence at that time concerning these allegations.[7]
 
 
 6
 For these reasons, we affirm the judgment of the district court.[8]
 
 
 
 [1]
 "Seclusion" is defined in the Bridgewater Seclusion and Restraint regulations as "[c]onfinement of a patient in a room alone with a locked door which cannot be opened from the inside on the admissions [now intensive treatment] or medical units...." 103 B.S.H. Sec. 651.06(6)(d). By statute, seclusion "may only be used in cases of emergency, such as the occurrence of, or serious threat of, extreme violence, personal injury, or attempted suicide." M.G.L. c. 123, Sec. 21, par. 3; see also 103 B.S.H. Sec. 651.06(5)(a) ("serious threat of violence, personal injury, escape, suicide, or other disruption constituting a threat to the safety or security of the patients, staff or hospital"). Elaborate procedural safeguards must attend any seclusion order. We will not detail them here, other than to note that they require written authorization, renewal of the order upon personal examination every three hours, personal examination by a physician every six hours, and a trained person constantly in attendance. M.G.L. c. 123, Sec. 21; see also 103 B.S.H. Secs. 651.07-651.11; O'Sullivan v. Secretary of Human Services, 402 Mass. 190 (1988)
 
 
 [2]
 Mathieu has articulated his legal claims only obliquely in his complaint but has elaborated on them in his subsequent pleadings. In recognition of his pro se status, we have examined the entirety of his submissions to help flesh out those assertions appearing in his complaint. We decline, however, to address any claim raised in his briefing that has not at least been hinted at in the complaint
 
 
 [3]
 The defendants' reading of the complaint no doubt stemmed from Mathieu's repeated references to 103 C.M.R. 430, the Department of Correction regulations governing disciplinary proceedings. These regulations prescribe detailed procedures that must precede the imposition of sanctions for any disciplinary offense committed by inmates at state correctional facilities. Although Bridgewater is denominated a correctional facility, it is "more akin to a hospital" than a prison, Doe v. Gaughan, 808 F.2d 871, 879 (1st Cir.1986); individuals are placed there "not ... for punishment but for therapeutic as well as public safety purposes." Id. (footnote omitted). The defendants indicate that, in light of Bridgewater's hybrid status, the Commissioner of Correction traditionally has granted it a waiver of these disciplinary regulations. In any event, seclusion is not a form of punishment for commission of a disciplinary offense. Instead, it is a temporary security measure meant to be implemented immediately in order to ease an emergency situation. See note 1 supra. Even prior to the expiration of the seclusion order, a patient must be released "if it is determined that the seclusion ... is no longer needed to prevent the continuation or recurrence of an emergency." 103 B.S.H. Secs. 651.07(2)(f), 651.07(3)(f). Particularly given the "necessity of quick action," Parratt v. Taylor, 451 U.S. 527, 539 (1981), and the limited duration of most seclusion orders, providing notice and a hearing of the type prescribed by 103 C.M.R. 430 prior to seclusion is obviously impractical. See Jackson v. Meachum, 699 F.2d 578, 585 (1st Cir.1983) (no right to notice and hearing prior to transfer to segregated confinement at Bridgewater)
 
 
 [4]
 With respect to this issue, see Rogers v. Okin, 478 F.Supp. 1342, 1374-75 (D.Mass.1979), modified on other grounds, 634 F.2d 650 (1st Cir.1980), vacated and remanded on other grounds, 457 U.S. 291 (1982); O'Sullivan v. Secretary of Human Services, 402 Mass. at 197 n. 10
 
 
 [5]
 "In reviewing a Rule 12(b)(6) dismissal, we take the well-pleaded facts as they appear in the complaint, indulging every reasonable inference in plaintiff's favor." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir.1990)
 
 
 [6]
 We note that the Department of Correction regulations contain a provision permitting challenges to be brought to the accuracy or completeness of "evaluative information" in an individual's institutional file. 103 C.M.R. Sec. 157.14. Although we do not decide the point, this may provide a mechanism by which Mathieu could challenge the allegations against him
 
 
 [7]
 In his appellate brief, Mathieu also claims that, on both occasions when he was placed in seclusion, he was "clinically cleared" shortly after arrival but was nonetheless detained there as punishment, in violation of M.G.L. c. 123, Sec. 21. This claim was not mentioned in his complaint and was only alluded to, without being developed, in his district court brief. We therefore decline to address it
 
 
 [8]
 Although it is largely moot in light of the record appendix filed by defendants, Mathieu's motion for leave to file a deferred appendix pursuant to Fed.R.App.P. 30(c) is allowed