Xifaras, J.
The plaintiffs, Patrick F. Grady, Melissa Silva and Andrew Pierre, bring this motion, through their guardians, seeking an injunction that would require the Department of Mental Retardation (DMR) to maintain their current residential placement and funding until DMR either obtains consent to a transfer or prevails at a transfer hearing. DMR opposes the motion arguing, primarily, that Grady is not entitled to a transfer hearing. For the following reasons the plaintiffs’ motion is allowed.
BACKGROUND
Grady is a twenty-five-year-old, severely mentally retarded man with a mental age of approximately twenly-two to twenty-five months. He has been a resident at the Crystal Springs School for approximately ten years. The Crystal Springs School is a special education facility which provides educational services pursuant to Chapter 766. Upon turning twenty-two years of age, the plaintiffs became eligible for DMR services under Chapter 688. Since that time DMR has funded their placements at Crystal Springs. DMR now proposes an alternative residential placement for Grady at Eastern Middlesex Human Services. Grady’s guardian, his mother, has visited this facility and has grave concerns about her son’s safety if he is placed at Eastern Middlesex. That facility is on a busy street and Grady has no appreciation of the dangers of traffic. Mrs. Grady also expresses concern that the configuration of the house is not conducive to quick and safe egress for her son.
Silva is a twenty-three-year-old woman who suffers from Cornelia de Lange syndrome[2] and a behavior disorder. She has been at Crystal Springs for fifteen years. DMR has funded her placement for approximately the past year. DMR now proposes that Silva be transferred to an alternative residential placement at South Shore Mental Health. Silva’s father has visited that facility and expresses serious concern about his daughter’s safety if she is placed there. Mr. Silva’s affidavit indicates that at least one of the clients at South Shore has been aggressive towards Silva in the past.
Pierre is a twenty-two-year-old man who suffers from congenital encephalopathy, mental retardation and a behavior disorder. He has resided at Ciystal Springs for sixteen years. Pierre functions at a twenty-two month level. DMR proposes to transfer Pierre to Eastern Middlesex. Pierre’s guardian expresses essentially the same concerns as Grady’s. Additionally, Pierre’s guardian is concerned about the lack of on-site medical and nursing care at Eastern Middlesex. DMR has funded Pierre’s placement at Crystal Springs for approximately six months.
DMR contracts with providers to obtain services for its clients. These services are put out to bid on a five-year cycle. Recently — the record does not reflect exactly when — DMR requested proposals for services to the instant plaintiffs. After awarding contracts to alternative placements, DMR gave notice that it would terminate funding at Crystal Springs. DMR never gave notice to the guardians, as described in G.L.c. 123B, §3, of the proposed transfers. Nor did DMR hold a *588 transfer hearing as described in the above-referenced statute.
On July 27, 1994 Grady was granted a temporary restraining order, maintaining the status quo (Crystal Springs placement and DMR funding) pending a decision on this motion. On July 29, 1994 Grady amended his complaint to add Pierre and Silva; the temporary restraining order then applied to all three plaintiffs.
DISCUSSION
The court, when asked to grant a preliminary injunction, must first evaluate the moving party’s claimed injury and likelihood of success on the merits. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If convinced that, without injunctive relief, the moving parly is at substantial risk of suffering irreparable harm, the court must balance this risk against the risk of irreparable harm to the opposing party if injunctive relief is granted. Id. This balancing must be done in light of each party’s likelihood of success on the merits. Id. Where the dispute involves a government entity, the court may also consider the risk of harm to the public interest. Brookline v. Goldstein, 388 Mass. 443, 447 (1983); Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988). A preliminary injunction may be granted only when the balance tips in favor of the moving party. Packaging Industries Group, Inc. v. Cheney, supra at 617. The purpose of the injunction is to maintain the status quo until the merits of the case can be determined. Thayer Co. v. Binnall, 326 Mass. 467 (1950).
Irreparable Harm to Grady
Grady and his guardians argue that, unless he is allowed to stay at Crystal Springs until a decision on the merits, they will be deprived of their statutory right, provided by G.L.c. 123B, §3, to notice of a proposed transfer and an adjudicatory hearing, prior to the transfer, if the guardian opposes the transfer. This deprivation constitutes irreparable harm. American Grain Products Processing Institute v. Department of Public Health, 392 Mass. 309, 327 (1984) (where loss of rights cannot be vindicated after prevailing on the merits, harm is irreparable). The statute provides for pretransfer notice and hearing. This right will be irretrievably lost if the plaintiffs are transferred prior to a trial on the merits. O’Sullivan v. Secretary of Human Services, 402 Mass. 190, 197-98 (1988) (deprivation of plaintiffs’ statutory rights would lead to violation of their persons which could not be remedied retroactively). See China Clipper Restaurant v. Yue Joe, 312 Mass. 540, 542 (1942) (violation of statute, which created a property right, could be enjoined even where there was no damage). When statutory violations are at issue, even public officials may properly be enjoined. Perez v. Boston Housing Authority, 379 Mass. 703, 729 (1980) (citations omitted).
Grady makes the additional argument that any transfer is inherently traumatic for a person with severe developmental disabilities. Although he offers no factual support for this assertion, the record shows that the plaintiffs may well be placed at some risk of physical harm if they are transferred to the proposed facilities.
Irreparable Harm to DMR
If injunctive relief is granted, DMR claims it will be required to continue funding the plaintiffs at the Crystal Springs School and may also have to fund the alternative placements already contracted for at Eastern Middlesex and South Shore. Harm which can be compensated by money damages is not irreparable. Fisher v. Board of Selectmen of the Town of Nantucket, 453 F.Supp. 881, 883 (D.Mass. 1978).
DMR further argues that other needy individuals will be denied services if DMR is required to fund double placements for these plaintiffs. DMR offers no reason, and the court can fathom none, why these other needy individuals could not take advantage of the slots at Eastern Middlesex and South Shore. There is no showing by DMR that the public interest is at risk of harm. Brookline v. Goldstein, supra at 447.
Likelihood of Success on the Merits
General Laws c. 123B addresses the function and duties of DMR. Section 2 of that statute authorizes DMR to adopt regulations which establish procedures for the transfer of mentally retarded persons in departmental facilities. Those regulations are found at 104 Code Mass. Regs. 21.63 (1986). Transfer is also governed by G.L.c. 123B, §3 (1992 ed.).
When a mentally retarded person is receiving residential services from DMR, DMR shall request the guardian’s consent prior to transferring that person from one residential facility for the mentally retarded to another. G.L.c. 123B, §3 (emphasis added). The statute specifies that the notice be given forty-five days before the proposed transfer and that it contain certain information. Id. If the guardian objects to the transfer, it is stayed until DMR prevails at an adjudicatory hearing.
Whether the plaintiffs are entitled to notice and a subsequent hearing hinges on whether they are to be transferred from one residential facility for the mentally retarded to another. General Laws c. 123B, §1 defines facility as “a public or private facility for the care and treatment of mentally retarded persons.” The crux of DMR’s argument that the statute does not apply is that Crystal Springs is not a “facility.” This argument is made notwithstanding the fact that DMR has entered into rate agreements with Crystal Springs in which Crystal Springs’s program type is designated as residential facility. In light of the statutory definition, DMR’s argument is, at best, weak.
General Laws c. 123B, §2 gives DMR the authority to adopt regulations regarding, among other things, transfers of DMR clients. Pursuant to the exercise of that authority, DMR promulgated 104 Code Mass. Regs. 20.02 which includes in the general definition of *589 mental retardation facility “any . . . private entity . . . which providefs] . . . residential treatment, care or supervision services.” DMR further defined mental retardation facility, for purposes of transfers, as a “separately sited community residential program for the mentally retarded . . . that receives Departmental financial assistance.” 104 Code Mass. Regs. 21.63(1)(a). Departmental financial assistance includes a contract, other than a procurement contract, by which DMR provides funds or services purchased by DMR. 104 Code Mass. Regs. 20.02(27)(a)(d) (1987). Contracts between DMR and Crystal Springs School appear to be service contracts and so Crystal Springs School is receiving Departmental financial assistance within the meaning of the regulation.
For purposes of transfers, the regulatory definition of mental retardation facility is considerably narrower than both the statutory and general regulatory definitions. Regulations which conflict with the statute under which they are adopted are invalid. Beth Israel Hospital Assoc. v. Board of Registration in Medicine, 401 Mass. 172, 176 (1987). The conflict here is readily apparent. Under G.L.c. 123B, §3 the plaintiffs, “as mentally retarded person[s] . . . receiving residential services through [DMR],” are entitled to notice and a hearing prior to transfer. No restriction is placed on the type or site of residential services referred to in the statute. The additional transfer regulations found in 104 Code Mass. Regs. 21.63 (1986) provide for notice and hearing only when certain specific, listed facilities are involved. Among the types of facilities listed are “separately sited community residential programas].” There is no definition of just what a separately sited community residential program is and it is arguable that Crystal Springs may be such a program. The dispositive issue, however, is that the regulation, by restricting the availability of rights granted by the statute, is in conflict with the statute and is, thus, invalid. Beth Israel Hospital Assoc. v. Board of Registration in Medicine, supra at 176.
Having considered the risk of irreparable harm to both parties and having concluded that it is likely that the plaintiffs will be able to establish that they are entitled to notice and a transfer hearing, injunctive relief will be granted. Packaging Industries Group, Inc. v. Cheney, supra at 617.
DMR’s Request for Security
In its request for security DMR misconstrues Mass.R.Civ.P. 65(c). Rather than the strict requirement for security which DMR urges, the rule specifically provides that “unless the court, for good cause shown, shall order otherwise, no . . . preliminary injunction shall issue except upon the giving of security by the applicant, . . .” Mass.R.Civ.P. 65(c). The plaintiffs have satisfied the court that they are indigent; the guardians are not financially responsible for their children. These circumstances constitute good cause not to require security. See Paro v. Longwood Hospital, 373 Mass. 645, 653 (1977) (no bond required when medical malpractice tribunal finds legal merit in plaintiffs claim).
ORDER
Therefore it is hereby ORDERED that:
The defendant, Department of Mental Retardation, is enjoined from transferring Patrick F. Grady, Melissa Silva and Andrew Pierre from Crystal Springs School and the defendant, Department of Mental Retardation, shall continue to fund the placement of said Patrick F. Grady, Melissa Silva and Andrew Pierre at the Ciystal Springs School until further order of the Court.
It is further ORDERED that:
(a) The defendant file an answer to the complaint on or before August 31, 1994;
(b) all discovery be completed on or before September 15, 1994;
(c) all motions be filed in accordance with Rule 9A on or before October 15, 1994; and
(d) the trial is scheduled at Fall River Superior Court on Monday, November 7, 1994 at 9:00 a.m.

 This syndrome is characterized by mental retardation, growth failure and specific congenital malformations. Stedman’s Medical Dictionary, 5th ed., 1982, p. 1386.