SCIABA CONSTRUCTION CORPORATION *vs.* MASSACHUSETTS
TURNPIKE AUTHORITY & another.[1]

Suffolk. March 5, 1992. - May 8, 1992.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ

*Injunction. Massachusetts Turnpike Authority. Public Works*, Bidding
   procedure.

A judge did not err in denying a request for a preliminary injunction re-
   straining the Massachusetts Turnpike Authority from awarding a cer-
   tain public works contract or permitting the performance of any work
   with regard to the project until a court had determined the propriety of
   the authority's prequalification process and its refusal to permit the
   plaintiff contractor to submit a bid, where the plaintiff failed to demon-
   strate that it was likely to succeed on the merits. [608]

In awarding a public works contract for the repair of a tunnel under Bos-
   ton Harbor, the Massachusetts Turnpike Authority was authorized,
   pursuant to its enabling legislation (St. 1952, c. 354) and G. L. c. 30,
   § 39M, to require prequalification of bidders and, on the record of an
   appeal by a disqualified bidder from an order of a Superior Court judge
   denying its application for injunctive relief, this court was satisfied that
   the disqualified bidder had obtained an adequate review of its claims.
   [608-611]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 26, 1991.

A motion for a preliminary injunction was heard by
*Charles F. Barrett*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*John J. Spignesi* for the plaintiff.

*James J. Myers* (*Stanley A. Martin* with him) for Massa-
chusetts Turnpike Authority.

---

[1]Kiewit Eastern Co., an intervener. Kiewit was granted the contract to
the Callahan Tunnel ceiling repair.

*Steven J. Comen* for Kiewit Eastern Co., intervener.

LYNCH, J. The plaintiff (Sciaba) appeals from an order of a Superior Court judge denying Sciaba's application for injunctive relief. We transferred the case to this court on our own motion. Sciaba argues that: (1) the defendant, the Massachusetts Turnpike Authority (authority), is not authorized to prequalify bidders, and therefore the rejection of its bid at the prequalification stage was improper; (2) the prequalification process adopted by the authority leaves a prospective bidder with no avenue of appeal; and (3) the judge's denial of injunctive relief was an abuse of discretion.[2] We affirm.

The following facts were determined by the Department of Labor and Industries (department) in a written decision, and adopted by the judge. The authority solicited bids pursuant to G. L. c. 30, §§ 39F-39M, & 39R (1990 ed.), for ceiling demolition and reconstruction of the Callahan Tunnel, which lies underneath Boston Harbor. On January 31, 1991, the authority issued a notice to contractors and required prospective bidders to prequalify in accordance with stated procedures. Sciaba filed a prequalification statement. On February 22, the authority determined that Sciaba did not possess the qualifications necessary to receive prequalification status. On February 26, Sciaba requested reconsideration, which was denied. On March 15, Sciaba protested to the department the decision not to prequalify Sciaba. On March 19, Sciaba expanded the protest, questioning the authority's power to prequalify bidders. On March 20, the authority received and opened five bids; five other bidders, including Sciaba, were denied prequalification and thus did not bid. On March 25, the department heard the matter, pursuant to G. L. c. 149, § 44H (1990 ed.).[3]

---

[2]We do not reach the issue whether the authority erroneously denied prequalification, because that issue is not raised by an appeal from the denial of the preliminary injunction.

[3]General Laws, c. 149, § 44H (1990 ed.), provides in part: "[T]he commissioner of labor and industries or his designee shall enforce . . . section thirty-nine M of chapter thirty. . . He shall have all the necessary powers to require compliance therewith including the power to institute and prose-

On March 26, the department decided that the authority was not authorized to prequalify bidders, but did not reach the question whether the authority improperly denied Sciaba prequalification. Sciaba then sought injunctive relief in the Superior Court. The denial of its request for a preliminary injunction forms the basis of this appeal.

In ruling on a request for a preliminary injunction a judge initially "evaluates in combination the moving party's claim of injury and chance of success on the merits." *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980). The judge determined that the plaintiff demonstrated little likelihood of success. The judge ruled that: the authority had the power to qualify prospective bidders prior to bidding; the authority's prequalification guidelines and criteria were adequate (although they could have been clearer); the decision of the authority denying the plaintiff's qualification to bid on the contract was not without rational basis, arbitrary or capricious; and the plaintiff did not demonstrate to the judge's satisfaction that if its position on prebid qualification was correct, it would be able to qualify on a postbid basis. We conclude that the judge's denial of Sciaba's request for injunctive relief was proper because Sciaba failed to demonstrate that it was likely to succeed on the merits.

Pursuant to the authority's enabling legislation, St. 1952, c. 354, as amended, it is empowered to "make and [to] enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act; provided, that sections twenty-six to twenty-nine, inclusive, and *sections forty-four A to forty-four L, inclusive, of chapter one hundred and forty-nine* of the General Laws and *sections thirty-nine F to thirty-nine M, inclusive, of chapter thirty* of the General Laws shall apply to contracts of the Authority to the same extent and in the

---

cute proceedings in the superior court to restrain the award of contracts and the performance of contracts in all cases where, after investigation of the facts, he has made a finding that such award or performance has resulted in violation, directly or indirectly, of the provisions of said . . . section thirty-nine M . . . ."

same manner as they are applicable to the commonwealth" (emphasis supplied). St. 1952, c. 354, § 5(*m*), as amended through St. 1980, c. 49.[4]

Sciaba argues that the prequalification statute, G. L. c. 29, § 8B (1990 ed.), only authorizes the Metropolitan District Commission (MDC) and the Department of Public Works (DPW) to adopt prequalification procedures.[5] We do not agree. This statute requires the MDC and DPW to utilize prequalification; it does not prohibit the authority or other public agencies from using such procedures.

General Laws c. 30, § 39M, the statute governing the awarding of the construction contracts for public works by the authority provides in part that "[e]very contract for the construction, reconstruction, alteration, remodeling or repair of any public work . . . shall be awarded to the *lowest responsible and eligible bidder* on the basis of competitive bids publicly opened and read by such awarding authority . . . *provided, however, that such awarding authority may reject any and all bids, if it is in the public interest to do so*" (emphasis supplied). Since the authority must determine which entity is "responsible and eligible," there is no suggestion in

---

[4]Statute 1980, c. 49, also inserted into § 5(*m*), the following language: "All general or special laws, or parts thereof, inconsistent herewith, are hereby declared to be inapplicable to the provisions of this act. Notwithstanding the provisions of this clause, the Authority may, with the approval of the secretary of transportation and construction or his designee, without competitive bids and notwithstanding any general or special law, award a contract, otherwise subject to this section, limited to the performance of emergency repairs necessary to preserve the safety of persons or property."

[5]General Laws c. 29, § 8B (1990 ed.), provides in part: "The commissioner of public works or the commissioner of the metropolitan district commission shall require that any person proposing to bid on any work, excepting the construction, reconstruction, repair or alteration of buildings, to be awarded by the department of public works or by the metropolitan district commission, respectively . . . submit a statement under the penalties of perjury setting forth his qualifications to perform such work. Such statement shall be in such detail and form and shall be submitted at such times as such commissioner may prescribe under rules promulgated by said department or commission, respectively, subject to the requirements of chapter thirty A."

the statute that the authority is precluded from prequalifying bidders, as opposed to determining whether such bidders are "responsible and eligible" postbid, as long as other statutory requirements are followed. As we stated in *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 840 (1984), "prequalification . . . is a cornerstone of the competitive bidding statute."

General Laws c. 29, § 8B, provides procedural safeguards with respect to prequalification.[6] Sciaba argues that the authority's procedures contain no such safeguards, and (notwithstanding the fact that Sciaba is before this court on appeal) the authority's procedures leave a prospective bidder with no avenue of appeal.

From the record before us, we cannot determine the extent to which the authority's procedures complied with applicable prequalification requirements of the statute. The Superior Court judge did rule, however, that the decision of the au-

---

[6]General Laws c. 29, § 8B, provides in part: "Any prospective bidder who is aggrieved by any decision or determination of the prequalification committee or the commissioner which affects his right to bid may file a new application for qualification at any time, or within fifteen days after receiving notice of such decision the applicant may request in writing a hearing before an appeal board to reconsider his application or qualifications. The appeal board in the department of public works shall consist of the commissioner, the associate commissioners and the chief engineer of public works, or their designees, and the appeal board in the metropolitan district commission shall consist of the commissioner, the associate commissioners, and the director or chief engineer of the division involved, or their designees.

"Any bidder or prospective bidder who so requests shall be granted a hearing by such appeal board at which he may submit any and all additional information or evidence bearing upon his finances, experience or other qualifications which may be relevant thereto. Such hearing shall be held without delay and the board shall promptly render its decision after taking into consideration all relevant information or evidence submitted relating to the bidder's qualifications. The appeal board may modify, amend or reverse any previous decision of the prequalification committee or the commissioner with respect to the qualification of the applicant or may sustain such previous decision. Such hearing shall be deemed to be an adjudicatory proceeding, and any bidder or prospective bidder who is aggrieved by the decision of the appeal board shall have a right to judicial review under the applicable provisions of said chapter thirty A."

thority denying Sciaba's qualification to bid on the contract "was not without rational basis, arbitrary or capricious." Furthermore he decided that Sciaba did not demonstrate to his satisfaction that, if its position on prebid qualification was correct, it would be able to qualify on a postbid basis. We are satisfied, therefore, that on the record before us Sciaba obtained an adequate review of its claims. It should be noted, however, that an awarding authority seeking to take advantage of prequalification must provide a meaningful appellate process which provides the same or analogous procedural safeguards as are delineated in G. L. c. 29, § 8B.

*Order denying preliminary injunction affirmed.*