Volterra, J.
This is a counterclaim for an accounting, breach of contract and quasi-contract unjust enrichment brought by defendant Dr. Jonathan Hall (“Hall”) who alleges that the Plastic Surgical Services of New England, P.C. (“Plastic Surgical”) owes him compensation for services rendered pursuant to an employment contract between Hall and Plastic Surgical. Hall has moved for a preliminary injunction to prevent the reach and apply third-party defendants from releasing funds owed to the plaintiff. For the reasons stated below, defendant Hall’s motion for a preliminary injunction is ALLOWED.
BACKGROUND
The background of this case is outlined in detail in my Memorandum of Decision and Order on Plaintiff s Motion For Injunctive Relief and need not be repeated here.
FINDINGS OF FACT[1]
Haying heard arguments from both parties (as well as argument from New England Memorial Hospital (“NEMH”), a secured creditor of the plaintiff) and having reviewed their various submissions, I make the following findings of fact:[2]
*226 1. An employment contract existed between Hall and Plastic Surgical covering Hall’s employment from July 1990 to July 1992.
2. Pursuant to this contract, Dr. Hall was to be paid a base salary of $12,500 a month and a bonus equal to 50 percent of the excess of Plastic Surgical’s gross receipts attributable exclusively to services of Hall over $300,000, and 78 percent of such excesses over $340,000.
3. During his final year of employment, Dr. Hall was not paid $364,659 in compensation to which he was entitled.
4. Dr. Hall has not been paid this amount to this date nor has Plastic Surgical accounted for the existence or whereabouts of these funds.
5. Plastic Surgical does not have liability insurance sufficient to compensate Dr. Hall for this amount should he prevail at trial.
6. Blue Cross of Massachusetts, Blue Cross and Blue Shield of Massachusetts, Bay State Health Care, Inc.. Tufts Associated Health Plans, Inc., and U.S. Healthcare, Inc. (the “Reach and Apply Defendants”) are insurance companies who have reimbursement agreements with Plastic Surgical. The reach and apply defendants are currently holding — and/or are expected to hold in the future — payments due to Plastic Surgical pursuant to these reimbursement agreements.
7. The reach and apply defendants have, to date, withheld payments due to the plaintiff totalling approximately $35,000.
8. Despite the fact that the amount currently owed the plaintiff is only 10 percent of the amount of damages claimed by the defendant, plaintiff asserts that without these funds Plastic Surgical may be unable to continue as a functioning operation. This fact alone lends credence to Dr. Hall’s argument that, without this injunction, he would be unable to collect on a judgment in his favor in this case.
9. NEMH is a secured creditor of Plastic Surgical. Plastic Surgical owes approximately $732,943 to NEMH at this time.
10. Dr. Hall, prior to leaving the plaintiffs employ, copied a number of patient files, possibly in violation of his employment contract. Even assuming a violation, the damages suffered by the plaintiff were slight.
CONCLUSIONS OF LAW
In Massachusetts, in evaluating a request for a preliminary injunction, “the judge initially evaluates in combination the moving party’s claim of injury and chances of success on the merits.” Packaging Industries Group, Inc., supra, at 617. The only harm which need be considered is irreparable harm, those injuries “not capable of vindication by a final judgment.” Id. at 617, n. 11. In the present case, I have found Dr. Hall’s likelihood of success on the merits to be great. Dr. Hall has alleged that the defendant has withheld certain portions of his compensation to which he was entitled under the employment agreement. The plaintiff has not denied that Dr. Hall is owed some money, but instead argues that this amount is offset by money that will be due to Plastic Surgical for damages resulting from Dr. Hall’s own breach of the contract. Since I find that Plastic Surgical has suffered only minor, if any, damages, it follows that Dr. Hall’s likelihood, of success on the merits is great. Additionally, I find that Dr. Hall would likely be irreparably harmed if this injunction did not issue. Plastic Surgical has failed to account for a large amount of funds due to Dr. Hall and there is every likelihood that such funds would disappear — if indeed they still exist — before a judgment could be rendered in this case.
“If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance the risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Packaging Industries Group, Inc. at 617. In weighing the potential harms to each party, I find that the scale tips in favor of Dr. Hall. Plastic Surgical’s arguments that it will suffer irreparable harm by being compelled to pay a debt it is obliged to pay are unavailing.
Plastic Surgical has argued that this injunction would be deleterious to the public to the extent that the injunction may force Plastic Surgical to lay off workers and/or stop seeing patients. A judge may, under certain limited circumstances, consider harm to the public interest in deciding a motion for a preliminary injunction. Bank of New England, N.A. v. Mortgage Corporation of New England, 30 Mass.App.Ct. 238, 245-46 (1991) (and cases cited therein). It would, however, be highly unlikely for such a situation to exist in an action between private parties. Id. This is true even in cases where the issuance of an injunction may tangentially have a negative impact on the public. Id. at 241. (Considering harm to public interest in an action between private parties was an abuse of discretion even though the granting of the injunction might cause a premature and unnecessary bankruptcy which could adversely affect Boston’s real estate market.) Likewise, in the present case, considering harm to the public interest would be improper.
Finally, NEMH has asked the court to consider potential harm which it might suffer if the injunction is granted. NEMH, however has no standing in this action nor would their claim be ripe even if they did. Additionally, NEMH has not demonstrated that it will suffer any harm, irreparable or otherwise, if this injunction is granted. Plastic Surgical has not defaulted on its payments to NEMH and, even if Plastic Surgical were to go bankrupt, NEMH’s status as a *227 secured creditor would not be affected in any way by virtue of this injunction.
ORDER
For the reasons stated hereinabove, the defendant’s motion for a preliminary injunction is ALLOWED. The reach and apply defendants shall keep the funds due to Plastic Surgical in escrow accounts and provide bi-monthly (once every other month) accountings of these accounts to Plastic Surgical, Dr. Hall and this court. If the aggregate total of these accounts reaches $364,659, any of the parties may apply to this court to have additional payments above this amount released to the plaintiff. In the alternative, upon posting a bond in the amount of $364,659, Plastic Surgical may make a motion to this court to have the preliminary injunction dissolved.

 While findings of fact are not specifically required for the issuance of a preliminary injunction, the Supreme Judicial Court has expressed a clear preference that such findings be made. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 612 n.6 (1980).

 By definition a preliminary injunction is granted or denied only after an abbreviated presentation of the facts and the law. Packaging Industries Group, Inc. at 616. This being the case, the findings of fact are not binding on the ultimate factfinder and “may not correspond to the final judgment." Id.