van Gestel, J.
This matter is before the Court on the request of the plaintiff, Michael Rauseo (“Rauseo”), acting in his capacity as Trustee of the Suffolk/Med-ford Realty Trust (the “Trust”), seeking preliminary injunctive relief. The defendant, Massachusetts Port Authority (“Massport”) opposes the request.

BACKGROUND

In 1995, Massport appealed from the granting of a variance by the Boston Board of Appeal (the “Board”) to the Trust. The variance would permit the Trust to convert a long-vacant warehouse building in Charles-town to “124 Apartments with Ground-Level parking." The property is to be rehabilitated into residential/studio working space for Boston area artists and other design professionals. But for Massport, at the time of the granting of the variance, the project received overwhelming support from the immediate neighborhood, from the Mayor’s Office of Cultural Affairs, from the Boston Redevelopment Authority and from the Carpenters Union, AFL-CIO. The variance was granted by a unanimous vote of the Board of Appeal.
In granting the variance, the Board noted “an acute need” in Boston for artists’ studio residences, and found “(r)esidential use of this historic and handsome industrial building will be in harmony with the general purposes of the [Boston Zoning] Code, because it is adjacent to a residential area.” A “menacing eyesore” would be turned into a neighborhood “amenity.” Further, the Board observed that Massport “offered no present likelihood that [an industrial] use could be found for [the building].”
The property, although abutting a residential area, was in the Terminal Street Manufacturing Subdistrict which was then zoned for industrial and manufacturing uses. Thus the need for the variance.
In July of 1998, Massport entered into an agreement with the Trust whereby for certain rights regarding the property, it dismissed, with prejudice, its .appeal of the decision granting the variance concerning the use proposed. Among other things, the agreement of July 8, 1998, included a concession by the Trust that Massport owns, and operates substantial areas of industrial property in the near vicinity, thereby generating noise, truck traffic, dust and other activities tweniy-four hours a day, which the Trust and its tenants will not object to. Massport also obtained an easement over the property for certain road and other industrial activity and a “right of first offer” to purchase the premises.
The essence of the July 8, 1998, agreement was that Massport was withdrawing its objection to the Trust’s project as approved by the Board of Appeal in return for the concessions noted above and others detailed in the letter. The agreement specifically recites that the “Trust will be allowed to pursue its present plans to rehabilitate the existing building ... on the premises for approximately 124 units (each to accommodate a mixed working studio and residential use) with associated parking to be designed for and marketed to artists ...”
In addition to the zoning issue — now solved by the variance and the withdrawal of Massport’s appeal— the property is also located within a Designated Port Area (“DPA”), as determined by the Massachusetts Department of Environmental Protection (“DEP”). Both the DEP arid the Massachusetts Office of Coastal Zone Management (“CZM”) strongly favor water-dependent industrial uses within a DPA and limit other uses in these areas. Therefore, in addition to the zoning variance, the Trust still must petition the CZM to have the boundaries of the DPA moved such that the project falls outside of them. Massport and the Trust were aware of this issue when they entered into the settlement of the zoning appeal.
Preliminary to proceeding to seek an adjustment in the DPA boundaries, counsel for the Trust wrote to Massport, seeking its support. Massport refused, stating that it “will not support your client’s proposal to redesignate the DPA in Charlestown,” knowing full well that without such a redesignation, the project could not go forward.

DISCUSSION

Although there are more facts relating to the efforts of the Trust and its many community supporters, including the Mayor of Boston, to convince Massport to affirmatively support the DPA boundary change so that the project may proceed, Massport remains steadfast in its refusal, thus, the Trust’s present effort to seek the aid of this Court in enjoining Massport from *691 opposing the DPA change and compelling it to support the petition.
The Court need not recite in detail the criteria to be considered in assessing whether a preliminary injunction ought to be granted. It is well known that the Trust must show a reasonable likelihood of success on the merits, the potential for irreparable harm if not granted, the absence of an adequate remedy at law, and that its harm outweighs any harm to Massport from granting the relief sought. See, e.g., Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). The Trust has done so here.
Massport, when it entered into the July 8, 1998, agreement resolving the zoning appeal, entered into a binding contract agreeing to allow the Trust to pursue its plans to rehabilitate the building for 124 units of artists’ studio and residential space, with necessary parking and other amenities. Massport received good and valuable consideration for its agreement. For Massport now to oppose the change in the boundary lines for the DPA, thereby knowingly to prevent the very project it agreed to allow, would constitute at minimum a breach of its contract with the Trust, a violation of its implied covenant of good faith and fair dealing, and quite probably a serious and intentional violation of G.L.c. 93A. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 469-74 (1991).
This Court presumes that a responsible public authority would not knowingly commit the breaches and violations just outlined. Indeed, at the oral argument on the request for injunctive relief, counsel for Massport assured this Court that his client did not intend to oppose the Trust’s petition to CZM for a change in the DPA boundary, but rather was simply reserving its rights to make sure that the petition remained consistent with the project approved by the zoning variance. The Court accepts that representation from a respected attorney and officer of the court on behalf of a responsible public authority — and it will hold them both strictly thereto.
On the specific issue of the preliminary injunctive relief, given Massport’s representations to the Court that it will act in a manner fully consistent with the explicit approval of the Trust’s project appearing in the July 8, 1998, letter agreement, no injunction is necessary at this time. Provided, however, that should Massport take a position inconsistent with its agreement and its representations to the Court once the Trust’s petition is submitted to CZM, this Court will act instantly in whatever manner may then be appropriate.