Hines, J.
Plaintiffs, William Doyle (“Doyle”), Jennifer Allen (“Allen”) and the Intervenor, Plainville Racing Company (“PRC”) join in this motion seeking to enjoin the Standardbred Owners of Massachusetts (“SOM”) from holding the 2003 Massachusetts Sire Stakes at the Northampton Fairgrounds. Doyle and Allen, who are horse owners, argue that the track at Northampton is unsafe for harness racing and that the scheduled races violate G.L.c. 128, §2(j) because Northampton is not properly licensed for harness racing. PRC argues that G.L.c. 128, §2(j) requires such races to be held at a “licensed pari-mutuel facility" and that its facility, the Plainville Racecourse, is the only licensed pari-mu-tuel horse racing company in Massachusetts. After a hearing on September 16, 2003, I granted the plaintiffs’ motion for a temporary restraining order on the ground that the license issued to Northampton in December 2002 specified certain race dates which had passed and that the license specified “running horse” races and not “harness” races. The parties have supplied me with fresh arguments for their respective positions. After due consideration and for the reasons set forth below, the motion for a preliminary injunction is GRANTED.
DISCUSSION
A court may enter a preliminary injunction if, after an abbreviated presentation of the facts and the law, the plaintiff has demonstrated 1) a reasonable likelihood of success on the merits of the claims and 2) a substantial risk of irreparable harm if the injunction does notissue. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If the plaintiff meets its burden, then the court must then balance the risk of harm to the plaintiff against any similar risk of irreparable harm that an order granting the injunction would create for the defendant. “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. at 617. On the record before me, I find that plaintiffs have met their burden as to both the chances of success on the merits and the risk of irreparable harm. I also find that the balance of the equities cuts in favor of the plaintiff. The harm alleged by the plaintiff outweighs any potential risk of harm that may accrue to the defendant by the granting of the injunction.
In accordance with G.L.c. 128, §2(j), “all races for the standardbred breeding program shall be held at a licensed pari-mutuel facility.” The issue before me on this motion for preliminary injunction is whether Northampton, by virtue of the license issued on December 18, 2002 and the amended license issued by the Commission on September 19, 2003, meets this statutory definition. The plaintiffs and PRC argue that the December license is not valid because it refers only to “running horse” racing and that the September 19, 2003 amendment purporting to grant a license for “harness racing” is invalid because the Commission granted the license without conducting a public hearing as required by G.L.c. 128A, §3. The Commission and SOM counter that the December 2002 license is valid for either type of race because the statute does not distinguish between “running horse races” and “harness races.” In the alternative they argue that if the statute requires a license for “harness races,” the September 19, 2003 amendment granted the license for that purpose.
On the threshold issue whether a license issued pursuant to G.L.c. 128A, §3 must state the particular type of racing authorized, I conclude that specificity is required. First, the Commission itself distinguishes between “running horse races” and “harness races” in *793 issuing licenses. The December 2002 license issued to Northampton specified that it was for “running horse” racing. The December 2002 license issued to PRC specified that it was for “harness racing.” Obviously the Commission, which has argued that it is due deference in the matter of statutory interpretation, treats the two types of races differently.
Second, though G.L.c. 128, §2(j) does not by its terms require a particular designation for the license, it must be read in conformity with the entire statutory and regulatory scheme. Other provisions of the statute distinguish between the different types of licenses: 1) G.L.c. 128A, §2 requires license applicants to specify race times which vary according to the type of race; 2) G.L.c. 128A, §3(e) and (f) separately regulate the granting of competing licenses for the two types of races; and G.L.c. 128A, §3(a) and (b) distinguish between “running horse races” and “harness races” in setting out the limits on the number of racing dates available for each type of license. All of these provisions strongly suggest that the distinction between the two types of licenses is a necessity rather than a convenience. Looking at the express provisions of the statute and giving due deference to the Commission’s interpretation of the statute,[1] I conclude that the December 2002 “running horse” license issued to Northampton is not valid for “harness” races.
SOM argues that if a “harness” race license is required, the Commission cured any defect in the original license with the amendment adopted on September 19, 2003.[2] On that date the Commission voted as follows: “To approve the request of the Hampshire, Franklin and Hampden Agricultural Society to amend the license issued to them, #006, and allow non pari-mutuel harness horse racing on September 17th, September 24th October 1st and/or three dates to be determined, if necessary.” The Commission presumably acted pursuant to G.L.c. 128A, §3 which provides in pertinent part that “if the Commission has already taken action on an application in any calendar year, after such notice and public hearing, no other public hearing need be held on any other application from the same applicant relating to the same premised filed prior to the expiration of said year.” Plaintiffs and PRC challenge the amendment on the ground that the Commission did not comply with G.L.c. 30A, §1 11A1/2 which requires notice and a public hearing before a license may be issued.[3]
There is an obvious tension between G.L.c. 30A, §llAl/2, the Massachusetts Open Meeting Law and G.L.c. 128A, §3 which permits the Commission to issue a supplementary license without the need for a public hearing. There is little guidance from our cases for this court in resolving this issue. However, I conclude that the provisions of G.L.c. 128A, §3 do not trump G.L.c. 30A, §HAl/2. This is especially so in circumstances as here where I have concluded that the supplemental license is of a different type than the original license. The deliberative process which informed the granting of the original license is not necessarily relevant to the supplemental license. The policy imperative that inheres in G.L.c. 30A, §11A1/2 is not honored unless interested parties are given the opportunity for a public hearing.
Therefore it is ORDERED and ADJUDGED that a preliminary injunction shall issue enjoining SOM from holding the 2003 Sires Stakes at the Northampton Fairgrounds unless and until it applies for and receives a license for harness racing in accordance with the procedures set forth in G.L.c. 128A, §§2, 3 with notice and a public hearing.

The regulations adopted by the Commission pursuant to its interpretation of the statute distinguish between the two types of racing. See 205 CMR 300 (harness racing) and 205 CMR 400 (running horse racing).

It is not significant that the license was for “non pari-mutuel” racing. The statute specifically provides that “such races may be betting or non-betting races.” G.L.c. 128, §2.

PRC also argues at length that Louis Giuliano is a person of bad character. Mr. Giuliano’s character is not relevant in the view I take of this case.