Brassard, J.
The case was before the court on July 9, 1998 on plaintiffs’ request for a preliminary injunction pursuant to Mass.R.Civ.P. 65. The plaintiffs, Allied Creditor Service, Inc. (“Allied”), Outsource Receivable Management, Inc. (“ORM"), and Brent Rice (“Rice"), are moving for a preliminary injunction to enjoin defendant Richard Swanson (“Richard”) from transferring some of his shares of stock in Allied and ORM to his wife, defendant Joyce Swanson (“Joyce"), pursuant to a divorce decree. Plaintiffs contend that the transfer of stock is in violation of an applicable stock restriction agreement. For the following reasons, the preliminary injunction is DENIED.
DISCUSSION
A. Factual Background
The complaint and affidavits, submitted by the plaintiffs, set forth the following facts: Allied and ORM are Massachusetts corporations whose sole shareholders, at present, are Rice and Richard. Allied is in the debt collection business and ORM is in the business of helping companies collect receivables before they must be turned over to a collection agency.
In 1992, Rice and Richard left Osborne Associates. Osborne Associates was a family-owned business. At that time, Rice and Richard became interested in Allied. At the early stages of Rice and Richard’s in *720 volvement with Allied, the stock was owned by William Bogardus. Concerns and experience with the involvement of family members in business dealings led Rice and Richard to initiate the Stock Restriction and Redemption Agreement for Allied.[1] Rice and Richard also prepared a similar restriction agreement for ORM.[2]
The stock in both companies, ORM and Allied, is currently (following a divorce decree of Joyce and Richard) owned as follows: 1,000 shares of Allied and 1,000 shares of ORM are owned by Rice, 500 shares of Allied and 500 shares of ORM are owned by Richard, and 500 shares of Allied and 500 shares of ORM are owned by Joyce. Rice currently owns a 50% interest in both ORM and Allied, and both Joyce and Richard separately own a 25% interest in both ORM and Allied.
In 1997, Richard and Joyce initiated divorce proceedings. The divorce proceedings culminated in a hearing on January 26, 1998 when Richard and Joyce apparently agreed that Joyce would receive from Richard 500 shares of Allied stock and 500 shares of ORM stock. The Essex County Probate and Family Court entered an order which was based upon an agreement of the parties for the voluntary transfer of the stock.
The transfer has yet to be registered in either corporation’s records. Richard has not transferred the stock, nor has he complied with the stock restriction agreement by offering the stock to the corporations. Richard has indicated his concern that he maybe held in contempt of the Essex County Probate and Family Court order if he complies with the Stock Restriction and Redemption Agreement and the Articles of Organization of both Allied and ORM.
B. Standard for Preliminary Injunction
A preliminary injunction is warranted if the moving party establishes both a likelihood of success on the merits of the claim, and a substantial risk of irreparable harm in the absence of an injunction. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If these factors are established, the Court must balance them against the harm that the injunction will inflict on the opposing party, including impact on the public interest. See T&D Video, Inc. v. City of Revere, 423 Mass. 577, 580 (1996). The inquiry should not focus on determining the “raw amount of irreparable harm” each party might suffer, “but rather the risk of such harm in light of the party’s chance of success on the merits.” Packaging Industries Group, Inc. v. Cheney, supra at 617.
C. Analysis
Applying these principles to the present case, the court turns first to the plaintiffs’ claims of likelihood of success on the merits of the claim, and concludes that the plaintiffs have failed to demonstrate a sufficient chance of success on the merits.
“[Although corporate restrictions on stock transfer are enforceable in this Commonwealth unless ‘palpably unreasonable,’ the restrictive provision is inoperative as to a particular transfer unless the restriction specifically applies to the transfer.” Durkee v. Durkee-Mower, 384 Mass. 628, 631 (1981), quoting Brown v. Little, Brown & Co., 269 Mass. 102, 110 (1929). In Durkee, the Supreme Judicial Court held that a stock restriction by its terms was applicable only to a “sale,” and that the probate court decree at issue in that case ordered a stock transfer as “an assignment by operation of law.” Id. The Supreme Judicial Court did “not decide whether a probate judge, pursuant to G.L.c. 208, §34, has the power to assign stock owned by one spouse to the other spouse, if the stock contained a restriction against assignment pursuant to a divorce decree.” Durkee, supra at 632, fn 5. The restriction in this case, while broad, does not specifically provide that it applies to the equitable distribution of an estate pursuant to a divorce decree. “The scope of the restriction cannot be greater than its actual language.” Durkee, supra at 633. The Allied and ORM corporate documents do not include a stock restriction applicable to the Probate Court’s assignment. The word “transfer” is not sufficiently specific to include the equitable distribution of assets by operation of law, pursuant to a divorce decree.
The plaintiffs have also failed to demonstrate sufficient risk of irreparable harm to warrant injunctive relief. Plaintiffs contend that upon transfer of the stock to Joyce, Allied and ORM will suffer irreparable harm. Allied, ORM and Rice assert that the divorce disputes are likely to cany over into the businesses, and that any minimization of Joyce’s involvement in corporate affairs may lead to freeze-out litigation. Allied, ORM and Rice are also concerned with the dynamics and balance of power within the corporations, potential liability for breach of fiduciary duty claims, and the additional costs of defensive decision making.
Although some of these issues may be serious concerns for a closely held corporation and its principals, counsel for Joyce represented at the hearing on this matter that his client would prefer the value of the shares to the shares themselves. Any harm caused to the plaintiffs by such a purchase would not, therefore, be irreparable.
Finally, in deciding a preliminary injunction, the court balances the harm threatened to both the plaintiffs and the defendants. The injunction requested by the plaintiffs would fundamentally disrupt the equitable distribution of assets ordered by the Probate Court. The court concludes that the balance of equities here cuts decisively in favor of the court’s denial of injunctive relief.
ORDER
For the foregoing reasons, it is ORDERED that the plaintiffs’ request for injunctive relief be DENIED.

 The Stock Restriction and Redemption Agreement provides, in pertinent part: “No stockholder shall transfer, sell, pledge, give, hypothecate, or encumber his Stock in any *721 manner, except as provided in Section 4 below and any attempt to do so, or any action in violation of this provision, shall be void and of no effect . . .” Section 4 describes the manner in which effective transfers shall be made, requiring that the Corporation be given an opportunity to purchase the stock before any transfer to a third party.

 Article V of the Articles of Organization provides, in pertinent part: “Any Shareholder, including the heirs, assigns, executors, or administrators of a deceased Shareholder, desiring to sell or transfer such stock owned by him or them, shall first offer it to the Corporation through the Board of Directors . . .”