Billings, A.J.
This case concerns the defendant’s refusal to rent an apartment to the plaintiff and his family (himself, his fiancee, and four children, the youngest 18 months and the others over six years of age). In a verified complaint and with the support of affidavits submitted in support of his requests for equitable relief, the plaintiff alleges three forms of discrimination: (1) refusing to rent to a family with children in violation of G.L.c. 151B,§4(11); (2)refusing to rent to his family because the property contains lead paint and/or would trigger duties under the abatement requirements of the lead paint law, in violation of c. 111, § 199A; and (3) refusing to rent to a recipient of public assistance, in violation of G.L.c. 151B, §4(10). The same refusal is also alleged to violate the federal Fair Housing Act, 42 U.S.C. §3604.
On May 15, 2001 this Court (Botsford, J.) granted a temporary restraining order, prohibiting the defendant from renting the apartment to anyone except the plaintiff or a current tenant (if any). I now allow the plaintiffs motion for preliminary injunction, on the terms set forth below.
Facts
The facts, with the significant exception of the defendant’s motive for refusing to rent to the plaintiff, are largely undisputed on the documentary record before me.[1] The plaintiff is presently homeless. He has a voucher for a Section 8 housing subsidy. His family members (who do not presently live with him) include, as noted above, one child under the age of six. Voucher in hand, and in the hope of reuniting his family under one roof, he has been looking for rental housing in the greater Boston area since late 2002, without success.
The defendant owns (see below) a three-story, three-apartment building at 27 Wave Avenue, Revere. On May 11, 2003 he placed an ad in the Boston Globe, advertising for rent a four-bedroom apartment. The apartment is on the third floor.
A housing advocate (Stepansky) acting on the plaintiffs behalf called to inquire about the apartment. He reached an answering machine with the following recorded greeting:
Hi, if you are calling in regards to the apartment for rent, the owner is not accepting section 8 and the apartment is not de-leaded. Otherwise, please leave a message. Thank you.
Stepansky filed a complaint that day with the Fair Housing Center of Greater Boston. A “tester” from the Center (Wilburn) called later in the day, posing as a would-be tenant, and spoke with the defendant. The tester told the defendant she had children aged four and five, whereupon the defendant responded he would not rent to her, and would not show her the apartment, because she had young children and the apartment had lead paint. She said her children were well-behaved, and was told they nonetheless needed to be at least seven years old if she was to rent the apartment.
The next day, the plaintiff himself called. The person he spoke to told him that the owner would not accept a Section 8 tenant; that the apartment was not de-leaded; and that the owner was away until Friday. The plaintiff asked if he could leave a message for the owner, and was advised to call back and leave a *267 message on the answering machine. He did so, leaving his message after hearing the same recorded greeting as Stepansky had. The plaintiffs message said nothing about his Section 8 voucher or his youngest child. Shortly after, the defendant called back and offered to show the plaintiff the apartment the same evening. The plaintiff then disclosed the facts that he had a Section 8 voucher and a small child. The defendant told him he could not rent the apartment to him, and hung up.
On May 13, another tester (Gonzalez) called and spoke to the defendant. The defendant asked her, “do you have section 8 or children?” She said no and was invited to see the apartment. The defendant showed her the apartment the next day, and offered to rent it to her subject to a credit check.
The defendants’ affidavits disclose that the first- and second-floor apartments in his building are occupied by two family members, both of whom have lived there a very long time, are elderly, and currently suffer from multiple health problems.
Anna Olsen, the defendant’s aunt who transferred the property to the defendant subject to a life estate, lives on the second floor. She has lived in the apartment her entire life. She suffers from an inoperable tumor behind her left eye; had a hip replacement in the summer of2002; and suffers from macular degeneration which adversely affects her vision.
Albert Moll, the defendant’s 77-year-old father, has lived for 45 years on the first floor. He suffers from arteriosclerotic heart disease with congestive heart failure (for which he has undergone bypass surgery), angina, hypertension, and depression. A letter from his cardiologist reports that because of these conditions, “he requires that his apartment be quiet and free of any stress or aggravation.”
Discussion
Applying the familiar standard of Packaging Industries, Inc. v. Cheney, 380 Mass. 609 (1980):
1. Likelihood of Success on the Merits. The plaintiff is likely to succeed on the merits. The defendant points to the exemption in c. 15IB, §4(11)(a) (discrimination against families with children) for:
Dwellings containing three apartments or less, one of which apartments is occupied by an elderly or infirm person for whom the presence of children would constitute a hardship. For purposes of this subsection, an “elderly person” shall mean a person sixty-five years of age or over, and an “infirm person” shall mean a person who is disabled or suffering from a chronic illness.
The defendant argues that he falls within this exemption. He concedes, however, that he did not mention his elderly relatives or their health problems in any of the conversations he had with the plaintiff, the housing advocate, or the two testers; instead, he told all four that his concerns were public assistance and children falling within the lead paint law. The plaintiff has, in other words, made a compelling (if, at this stage, necessarily preliminary) showing of pretext.
Also, the elderly/infirm exemption only applies to the statutory bar to discrimination against families with children where lead paint is not involved (c. 15 11, §4(11); it does not permit discrimination motivated by a desire not to abate lead paint (c. 111, §199A) or to take tenants on public assistance (c. 151B, §4(10).[2] The defendant’s statements to the plaintiff, the housing advocate, and the two testers were quite clear that his renting decisions were being driven by his desire not to take on a family on public assistance or a lead paint abatement project, not an aversion to children per se, or concern regarding their impact on the other tenants. There is no suggestion, for example, that he expressed interest in the sleeping, play, or life habits of the defendant’s children, or that he was at all interested in exploring Wilburn’s assurance that her children were well-behaved.
Finally, there is no elderly/infirm exemption in the federal Fair Housing Act which, if it applies[3] would override a more permissive state statute. In 42 U.S.C. §3604(b), the federal Act prohibits discrimination in rental housing on the basis of familial status, which is defined in Section 3602(k) to mean one or more persons under age 18 being domiciled with a parent, other person having legal custody, or their designee.
2. Balance of Harms; Public Interest On the balance of harms and the public interest (including the interests of third parties Olsen and Moll), the question is much closer. On the one hand, the plaintiff is a man who has been homeless and separated from his family for half a year because he cannot find housing. On the other side of the equation are two elderly persons with health problems, one of whom (Mr. Moll), plausibly and with his doctor’s support, asserts a medical need to be free from “stress and aggravation.”
On balance, however, I believe the facts and the law, the balance of harms, and the equities favor the issuance of an injunction. The plaintiffs likelihood of success on the merits is strong. The harm that he and his children will continue to suffer if he remains homeless and separated from them is likely irreparable. The fact that Mr. Moll lives on the first floor, Mrs. Olsen on the second, and the apartment for rent is on the third will ameliorate, to some degree at least, the normal incidents of life in proximity to young children. Finally, the purposes of the statutes prohibiting discrimination in housing are only served if prospective tenants actually receive housing on a nondiscrimina-toiy basis; the prospect of money damages, months or years down the road, is a veiy poor second best.
The Court was appropriately cautious in the terms of the ex parte temporary restraining order, which stopped short of moving the plaintiff and his family into the house. The TRO preserved the status quo, but it did not provide the plaintiff and his family with a *268 place to live. At this juncture, following a hearing at which the defendant was represented by counsel and availed himself of the opportunity to present evidence and argue the law, a more appropriately remedial injunction is called for.
ORDER
For the foregoing reasons, the defendant is preliminarily ORDERED AND ENJOINED, (a) to bring the rental unit, within 30 days, into compliance with all provisions of the lead paint law (G.L.c. Ill, §189A et seq.) as necessary to permit rental to families with children under six years of age; and (b) at the end of that time, to offer the unit to the plaintiff on same the terms and conditions as were being offered to potential tenants, not on public assistance and not having young children, in the period May 11, 2003 and following.
This order will be stayed from a period of ten days from the date hereof; during that time, the terms of the temporary restraining order will remain in effect.

I have considered, for purposes of this Motion, the Verified Complaint, the affidavits submitted by the plaintiff, and the affidavits submitted by the defendant.

The difference between c. 151B, §4(11) (families with children) and c. 111,§199A (families with children under six where the apartment contains lead paint) is not mere hairsplitting. The owner of an apartment with lead paint has an economic disincentive to renting to families with young children, which would require him to abate the lead hazard. The Legislature recognized the potential impact of this fact on the housing stock available to such families, and so in Section 199A prohibited discrimination motivated by the landlord’s desire not to abate. This prohibition is more specific, in its purpose and its drafting, than the general prohibition (in c. 15 IB, §4(11)) of discrimination against families with young children. The Legislature apparently determined that the policy reasons for including the elderly/infirm exemption in the latter do not apply to the former, perhaps considering the importance of having a lead-free housing stock and the risk that this goal will be undermined by pretextual assertions of the exemption. In any event, the three statutes are clear enough on their face, and among them, the exemption applies only to c. 15 IB, §4(11).

On this point I note, but do not decide, an issue concerning the applicability of the federal Act to these facts. The Act does not apply to owner-occupied buildings with four units or fewer. See 42 U.S.C. §3603(b)(2). The defendant apparently does not live in the building, but he is a remainderman; neither party, however, has briefed whether Mrs. Olsen’s life estate may take the property out of the federal Act’s operation.