Agnes, A.J.
1.Introduction
The plaintiff RK Enterprises, Inc. (“A-TECH”) is a Massachusetts business corporation with a principal place of business at 433 Boston Turnpike (Route 9) in Shrewsbury. The defendant 2 TECH Automotive (“2 TECH”) is a Massachusetts Limited Liability Corporation with a principal place of business at 160 Boston Turnpike (Route 9) Shrewsbury. A-TECH has moved for a preliminary injunction against 2 TECH to prevent the defendant from using “2 TECH” as a trade name on grounds that it is so similar to plaintiffs trade name that it constitutes unlawful infringement of A-TECH’s service mark. Although the matter arises at an early stage of the proceedings and the court has not conducted an evidentiary hearing, based on the materials submitted and the information supplied by counsel at the hearing, the essential facts are not in dispute.
2.The Facts
A-TECH has been in the automotive service and repair business for about 12 years. It has been at its present location on Route 9 since 1996. Over that 12 years, it has used the trade name “A-TECH Automotive” and a service mark consisting of the words “A TECH” above the words automotive company. It also has a picture of an automobile on top of the letter “T” in “A-TECH.” Sometime in 2003, the defendant began its business of automotive service and repair at the Route 9 location. The defendant’s corporation registered with the Secretary of the Commonwealth as “2 TECH Automotive, LLC” in December 2003. The defendant uses the phrase “2 TECH” as its trade name and a service mark consisting of the words “2 TECH” on top of the word automotive with the picture of an automobile above the word “TECH.” Copies of each of these trade names are part of the record before the court. The two businesses are located on opposite sides of Route 9 in Shrewsbury and are about 1 Vi to 2 miles apart from each other. The area in which the businesses are located is an intensely developed area with small and medium sized businesses, one after the other, along both sides of Route 9. There are a variety of automotive or automotive-related businesses in the area.
3.
The plaintiffs evidence that the public is confused by the similarity of the two names consists of a statement that a customer once asked if “2 TECH” was a second repair shop owned by “A TECH,” and a statement that a car was once towed to “2 TECH” that was supposed to be towed to “A-TECH.” Also, plaintiffs president adds that vendors have on occasion delivered parts to the wrong business. The defendant counters with statements by vendors who supply parts to both businesses and who state that there is no confusion.
4.Standard Applicable to Motion for a Preliminary Injunction
In deciding whether to grant a preliminary injunction, the court is required to perform a multi-part analysis. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). Initially, the court must determine whether the moving party has demonstrated a likelihood of success on the merits, and that it faces a substantial risk of irreparable harm— losses that cannot be repaired or for which compensation will not be adequate after final judgment — if the motion for the preliminary injunction is not granted. Id. at 617 & n. 11. If the moving party has met this burden, the court must then engage in a balancing test in which the irreparable harm faced by the moving party is compared to the harm that an injunction would inflict on the other party. “If the judge is con *260 vinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. In balancing these factors, “(w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the parly’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminaiy injunction properly issue.” Id. The stronger the case is on the merits, the less is required to be shown in terms of irreparable harm. See Gately v. Commonwealth, 2 F.3d 1221, 1224-25, 1234 (1st Cir. 1993). Furthermore, in an appropriate case, “the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983). See also LeClair v. Town of Norwell, 430 Mass. 328, 337 (1999); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
5. Safeguards Against Infringement of Trademarks and Service Marks
Under G.L.c. 110B, §2, any person may file with the Secretary of the Commonwealth an application to register a “service mark” or a “trademark.” A “service mark” is defined in G.L.c. 110B, §1 as a “mark used in the sale or advertising of services to identify the services of one person and distinguish it from the services of others.” A “trademark” is also defined in G.L.c. 110B, §1 as “any word, name, symbol or device or any combination thereof adopted and used by a person to identify goods made or sold by him, and to distinguish them from goods made or sold by others.” A “trade name,” on the other hand, is defined as a “word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others.” G.L.c. 110B, §1. In this case, neither the plaintiff nor the defendant registered a “trademark” or a “service mark” with the Secretary. However, G.L.c. 110B protects both statutorily established marks as well as common-law marks. Under G.L.c. 110B, §12, the “[ljikelihood of injury to business reputation or of dilution of the distinctiveness of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.” (Emphasis added.)[1] In this case, it is not necessary to determine whether the plaintiff has a common-law “trademark” or a “service mark” because the legal principles for determining whether there has been an infringement in violation of G.L.c. 110B, §12 are the same. See Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 485 n.6 (1986).
6. Determination of Infringement
The first question that must be considered is whether the plaintiff has acquired a trademark or service mark in the name “A TECH.” Putting aside cases in which common or generic names or symbols acquire a secondary meaning that is entitled to protection, see Planned Parenthood, supra, 398 Mass. at 485-88, a mark, symbol or name will generally not qualify for protection as a “service mark” or a “trade mark” under G.L.c. 110B or the common law if it is merely descriptive of the goods or services sold or offered by the person claiming the infringement. Professional Economics, Inc. v. Professional Economic Services, Inc., 12 Mass.App.Ct. 70, 74 (1981). Amarkwill qualify for protection under the statute or the common law so long as it is either sufficiently distinctive (often described as “arbitrary or fanciful”), or suggestive of the product or service without being merely descriptive. See Summary of Basic Law, supra, §20.172 at 111 (“Words, phrases and slogans used in connection with a product or service will be considered ‘purely descriptive’ and denied trademark protection absent proof of secondary meaning, where such words are only used to describe the intended purpose, function or use of the goods, the size of the goods, the class of users of the goods, a desirable characteristic of the goods, or the end effects of the goods upon their intended users. Even trade names which are practically identical and highly likely to confuse consumers may not obtain protection where they are unregistered and have yet to acquire a distinctive secondary meaning.”). For example, in Professional Economics, supra, the Appeals Court held that the plaintiff, Professional Economics, Inc., a Massachusetts corporation engaged in the business of financial planning and consulting for professional persons, had no basis for injunctive relief to prevent a New York corporation which was engaged in a similar business from using the words “professional economics” in connection with its business operations in Massachusetts because that phrase was not inherently distinctive, but merely descriptive and had not acquired a secondary meaning. Professional Economics, supra, 12 Mass.App.Ct. at 74-75. In the present case, the term “A-TECH” is not merely descriptive of an automotive repair service. Even though it may be somewhat suggestive of the service, it is entitled to protection as a trademark or service mark. See Summary of Basic Law, supra, §20.172 at 111 & n.7 (1996) (Noting that there is a distinction in the case law between “strong” and “weak” marks, the former encompassing words used in a truly “fictitious” or “fanciful” manner as well as those that are “arbitrary” or “suggestive.” The authors suggest that a “suggestive mark” is one which “connotes rather than describes a particular product or service and requires the consumer’s imagination to reach a conclusion as to the nature of the product or service; it is protected without proof of secondary meaning.”).
*261 7.
The second question to be considered is whether the two names in question are so similar that the public will be deceived into thinking that “A TECH” and “2 TECH” are one and the same business or related businesses. See Planned Parenthood, supra, 398 Mass. at 484; California Wine, supra, 297 Mass. at 378. “Such confusion may prevent the buyer from obtaining the goods [or services] he seeks or may endanger the reputation of the first user of the mark by association with the subsequent user.’’ Hasbro, Inc. v. Clue Computing, Inc., 66 F.Sup.2d 117, 121 (D.Mass. 1999), affirmed 232 F.3d 1 (1st Cir. 2000) (hereafter “Hasbro”). Under federal law, which closely resembles state law in its purpose to guard against confusion, mistake or deception in the use of trade marks, see Summary of Basic Law, supra, §20.172 at 114 (1996), the plaintiff in an infringement case such as this must prove three things to succeed: (1) use and ownership of a mark, (2) use by the defendant of the same or a similar mark, and (3) the likelihood that the defendant’s use will confuse the public and thereby harm the plaintiff. Hasbro, supra Here, as in Hasbro, supra the plaintiff has offered sufficient evidence, even at this preliminary stage of the proceedings, to meet his burden with respect to element one and element two.
8.
As for element three, the assessment of the likelihood of confusion, according to the First Circuit, there must be evidence of a “substantial” likelihood of confusion. This turns on a consideration of eight factors: (1) the similarity of the marks, (2) the similarity of the goods or services associated with the marks, (3) the relationship between the parties’ advertising, (4) the relationship between the parties’ channels of trade, (5) the classes of prospective purchasers, (6) evidence of actual confusion, (7) defendant’s intent in adopting its mark, and (8) the strength of the plaintiffs mark. See Star Fin. Services, Inc. v. Aaster Mortgage Corp., 89 F.3d 5,10 (1st Cir. 1996), quoted by Hasbro, supra 66 F.Sup.2d at 121. In Hasbro, the court rejected the claim by the maker of the board game “Clue” that the defendant’s use of an internet domain name (www.clue.com) to promote its computer consulting business caused confusion and should be enjoined. “The fact that one, two or three people over four years may have expressed confusion between Clue Computing’s Web site and Hasbro’s game does not constitute the level of actual confusion necessary to support a general finding of likelihood of confusion.” Hasbro, supra, 66 F.Sup.2d at 124.
9.
In the present case, applying the eight factors listed above, I conclude that the plaintiff has failed to meet its burden of establishing a likelihood of confusion. The two marks are similar though not identical. The services associated with each mark are identical or nearly so. In terms of advertising, channels of trade and potential customers, there was no detailed evidence presented, but it was agreed by the parties that each business deals with many of the same vendors, and uses a highway sign that employs each business’s respective mark. It is also reasonable to assume that each business appeals to the same potential customer base in the same general manner. With regard to the evidence of actual confusion, the plaintiffs case is weak. Although the businesses are only about IV2 miles apart, they are separated by a large number of commercial establishments and on opposite sides of a veiy busy roadway. The plaintiff has not produced one concrete case in which a customer was confused, misled or deceived about the plaintiffs business as a result of the defendant’s use of the “2 TECH” mark. The evidence offered by the plaintiff in this regard is meager at best. With regard to the defendant’s intent, the court again is without any concrete evidence that the defendant sought to “capitalize on the selling power of the plaintiffs mark.” Summary of Basic Law §20.174 at 114. Such may be the case, but the evidence before the court is lacking. Contrast Calamari Fisheries, Inc. v. The Village Catch, Inc., 698 F.Sup. 994, 1003-04, 1011 (D.Mass. 1998) (numerous affidavits from customers and others expressing confusion over the identities of two restaurants). Finally, with regard to the strength of the plaintiffs mark, it is fair to describe it as neither the strongest type of mark (those which are “arbitrary and fanciful”) nor the weakest (those which are “generic” i.e., referring to a “categoiy of good or service, without distinguishing the source or origin of the product”). See Hasbro, supra, 66 F.Sup. 2d at 125. Rather , “it appears to fit most readily into the category of‘suggestive’ marks which ‘connote rather than describe a particular product or service and require the consumer’s imagination to reach a conclusion about the nature of the product or service.’ ” Hasbro, supra 66 F.Sup.2d at 125-26, quoting Calamari, supra, 698 F.Sup. at 1006-07.
10.
For the above reasons, the plaintiff has failed to demonstrate a likelihood of success on the merits and thus there is no basis for awarding injunctive relief.

 Apart from the remedies established by G.L.c. 110B, § 12, there are common-law remedies for unfair competition and misuse of a trade name or trademark. See generally H. Alperin & L. Shubow, Summary of Basic Massachusetts Law §20.172 (14C Mass. Prac. 1996 & Supp.). Federal law also protects those who register trade marks from any nonconsensual use that “is likely to cause confusion, or to cause mistake or to deceive.” See 15 U.S.C. §1114(l)(a)(1982) (providing a civil remedy for such violations).