Curran, Dennis J., J.
This is an action to enforce a non-competition agreement between Eastern Bag & Paper Co., Inc. and its former territory manager, Jeffrey D. Ross.

I. THE FACTS

Eastern Bag hired Jeffrey D. Ross on March 21, 2006 with a financial package that exceeded $100,000, detailed as follows:
Annual gross pay of $71,760;
A $5,000 “sign-on" bonus, paid immediately;
A vehicle allowance of $400 a month;
A vehicle insurance allowance of $100 a month;
A cell phone allowance of $100 a month;
Gas mileage reimbursement of $.35 a mile;
Work-related tolls reimbursement, as necessary;
Entertainment reimbursement, as necessary;
Eligibility for Eastern’s standard benefits program starting within a week of hire;
401k eligibility on the first of the month after three consecutive months of employment; and
Laptop computer purchase (optional) at discounted company purchasing program with a three-year payroll deduction reimbursement option.
At the time Mr. Ross agreed to these terms and accepted the $5,000 cash bonus, he also agreed to abide by a limited non-competition contract for one year after he left Eastern Bag. That contract applied to one (of ten) counties in New Hampshire, four (of fourteen) counties in Massachusetts, and the state of Rhode Island. The non-compete provision stated:
Covenant Not to Compete. [Mr. Ross] covenants and agrees that for a period of one year after his [ ] employment ceases or is terminated for any reason whatsoever, [he] will not within the areas [described above] serve or become employed in a sales or sales-related capacity in competition with [Eastern].
Further, Mr. Ross contractually acknowledged that Eastern “ha[d] spent considerable time, money and effort in developing its sources of supply and customers as well as other proprietary information... to which [he] will have access”; those terms were “important, material and confidential”; and they significantly affected Eastern’s ability to successfully conduct business and its goodwill.
As Eastern’s Territory Manager, Mr. Ross was responsible for sales strategy, identifying and developing new customers, and planning and managing products. He was expected to have extensive customer contact.
When he resigned from Eastern Bag, Mr. Ross signed an additional contract, entitled a “Departure Memorandum,” in which he confirmed his obligations under the employment agreement and declared that:

*743
[He would] honor the terms of [his] employment contract including all confidential and non-compete clauses.

In consideration for this re-affirmation, Eastern agreed that Mr. Ross could keep the $5,000 in cash it had earlier given him, even though he had not completed the one year of employment, as contractually required.[1]
About eleven months after signing the employment contract with Eastern, taking the $5,000 cash and three months after re-affirming — in writing — his intention “to honor” the terms of the employment (including its non-compete provision), thereby inducing Eastern to forego its right to the return of file $5,000, Mr. Ross joined Eastern’s direct competitor, Ecolab, Inc., starting work in the very territory he had worked for Eastern.
Eastern now seeks to enforce the contract terms to which Mr. Ross agreed.

II. DISCUSSION

A. Introduction

The court has considered: (1) Eastern’s verified complaint; (2) its motion for a preliminary injunction; (3) its memorandum of law in support of its motion for a preliminary injunction; (4) the Agreement between Eastern Paper Bag and Company and Jeff Ross; (5) affidavit of John F. Mahon, III; (6) the defendant’s opposition to plaintiffs motion; (7) the defendant’s memorandum of law in opposition to the plaintiffs motion; (8) the affidavit of Jeffrey D. Ross; (9) the affidavit of John Marti; (10) the affidavit of Visa Lehti; and (11) appendix of legal citations.

B. The Standardfor Preliminary Injunctive Relief

The settled criteria for consideration of preliminary injunctive relief is, of course, set forth in the leading precedent of Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-22 (1980). Under those criteria, an applicant for preliminary injunctive relief must demonstrate: (a) a likelihood of success upon the ultimate legal merits of its claim; (b) the threat or presence of actionable or inequitable irreparable harm in the absence of preliminary injunctive assistance; (c) the absence of the lesser degree of harm to the opposing party from the imposition of the requested preliminary injunction; and (d) the significance of a public interest, if any, present in the circumstances of the dispute. The court must consider these criteria in combination and not in isolation. In the assessment of any harm, detriment or burden, the court must always ask whether those consequences are actionable or inequitable in light of governing law of the circumstances. “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party, may a preliminary injunction properly issue.” Packaging Industries Group, Inc., supra at 617.
The parties’ factual and legal submissions will be analyzed under each of these criteria, seriatim.

1.The Likelihood of Success on the Merits

Eastern has shown that it is likely to succeed on the merits of its breach of contract claim.
The contract, by its terms, is governed by Connecticut law, and as such Scott v. General Iron and Welding Co., 171 Conn. 132, 137 (1976), applies. The contract must be reasonable.
The agreement is reasonable in time (one year) (see Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 530-31 n.2 (1988)), geographic area (a limited number of counties in Massachusetts and New Hampshire and the state of Rhode Island) (see Weiss at 530-31 and Hart Nininger & Campbell Associates v. Rogers, 16 Conn.App. 619, 635-36 (1988)); the protections afforded to Eastern (see Van Dyck Printing Co., Inc. v. DiNicola, 43 Conn.Super. 191, 197-98 (1993)); Mr. Ross is not unduly restrained from working in other territories or other sales jobs; and finally, the agreement does not interfere with the public interest.

2.Irreparable Harm

Eastern will suffer irreparable harm if relief is denied. The non-competition agreement is obviously intended so that its salesmen and saleswomen not take advantage of the sales relationships they develop, and enables the company to move with a modicum of freedom in entrusting that sales personnel with its internal business and sales strategies.
Indeed, Mr. Ross expressly acknowledged the irreparable harm caused by a breach of the non-compete:

[Mr. Ross] expressly acknowledges that his [ ] services are unique in nature and that. . . breach . . . would cause [Eastern] irreparable injury non-com-pensable in money damages . . .

These are not mere words. They are express contract terms. Mr. Ross, over the age of 18 and of capacity, freely signed a document committing himself to them. He later reaffirmed them. He took $5000 to abide by them; he later re-affirmed them so he could keep the $5,000. The defendant’s present attack on this contract is simply unavailing; indeed, it reminds one of the expression:
A deal is a deal only until something better comes along.
3. The Balance of Harms
The harm which may befall Mr. Ross pales in significance to that Eastern might suffer. The latter’s business and customer prospects would be threatened by Mr. Ross working in the very same territory he managed for Eastern.
*744 Mr. Ross may simply not take a sales job in a defined area working for a competitor of Eastern. He can take any other sales job. He can work in the territoiy involved. He can compete with Eastern after a year. This is reasonable and limited.
4. The Significance of the Public Interest
There is little, if any, public interest affected by the issuance of injunctive relief. Granting a preliminary injunction would simply uphold the duty to honor one’s word, and respect a contract that an individual entered knowingly, willingly and voluntarily, for financial gain. Mr. Ross took the benefits; he ought to now be bound by its responsibilities.
This is a concept which some people, these days, utterly refuse to accept. But it is right.
C. Summary
The non-compete contract is reasonable in scope; it is fair to Mr. Ross in view of all the monies and benefits extended to him; and it protects Eastern’s legitimate interest in its customer base, marketing and sales strategies. It ought to, and will be, respected by this court.

RUUNG

For the foregoing reasons, the plaintiffs motion for a preliminary injunction is hereby ALLOWED.
An Order accompanies this Memorandum of Decision.

He had worked there for less than nine months.